## GENERAL LIGHTERAGE CO. v. HANSEN.

(Circuit Court of Appeals, Second Circuit. November 2, 1915.)

No. 42.

1. MASTER AND SERVANT ☞101, 102—MASTER'S LIABILITY FOR INJURY TO SERVANT—APPLIANCES.

An employer is required to exercise reasonable care to furnish safe appliances as well as a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. ☞101, 102.]

2. MASTER AND SERVANT ☞212, 286—ACTION FOR INJURY TO SERVANT—NEGLIGENCE—ASSUMPTION OF RISK—QUESTION FOR JURY.

Plaintiff was employed on a lighter of defendant which, because it frequently carried packages of acid on deck, liable to leak through the hatch cover and damage cargo below, had been fitted with a drip-pan running on small wheels on angle-irons fastened to the underside of the fore and aft coamings so that it could be run under the hatch-cover when needed and out of the way when not. Sometimes it did not move readily, and it was then the custom for some one to step into it and · start it by pushing. On one occasion, the mate being unable to start it, plaintiff was ordered to step in with him, and while both were in the pan it fell and plaintiff was injured. There was evidence that the

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

wheels rested on the angle-irons less than half an inch on each side. *Held*, that the risk from such construction was not one assumed by plaintiff, and that whether it constituted negligence on the part of defendant was properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 558, 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☞212, 286.]

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Charles Hansen against the General Lighterage Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This cause comes here upon appeal from a judgment of the District Court, Southern District of New York, in favor of defendant in error who was plaintiff below. The action was brought to recover damages for personal injuries; the Employer's Liability Statute is not involved, the action being at common law. The jury brought in a verdict for the plaintiff.

Nadal, Jones & Mowton, of New York City (Edward P. Mowton, of New York City, of counsel), for plaintiff in error.

John C. Robinson, of New York City, for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. Plaintiff was employed on defendant's steam lighter James L. Morgan. On her forward deck was a hatch about ten feet fore and aft by eight feet across, provided with the usual hatch-cover. The vessel was used largely in transporting packages of acids from which there was leakage. When such packages were stowed on the hatch-cover the leakage would sometimes drip into the hold, doing damage to cargo and boat. To remedy this a drip-pan was installed under the hatch. This was moveable, being so arranged as to slide off from under the hatch when it was open and to be drawn back under the hatch when it was closed. To each side of this drip-pan there were attached three iron wheels two inches in diameter, which ran on the horizontal flanges of angle-irons, one angle-iron being underneath each fore and aft hatch coaming. Each angle-iron track was twice the length of the pan so that the latter could slide aft entirely clear of the hatch. When this drip-pan was installed it was supposed that because of the sheer and trim of the vessel it would always, when free, run aft and clear the hatch; therefore the only arrangement for moving the pan was a piece of rope, attached to the forward end; the pan was drawn up by this rope until it was under the hatch, whereupon the rope was made fast. After the new device was installed it was discovered that it would not always work as had been anticipated; very frequently when the rope was cast off the pan would not run back by the action of gravity. When this happened one of the men had to stand in the pan and placing his hands against the coamings, or anything else, which would give him a purchase, he pushed the pan with his feet and thus started it out from under the hatch.

On the day in question, it being necessary to run the pan aft to clear the hatch, one of the men went below and cast off the rope. Thereupon the mate jumped into the pan from the deck, put his shoulder against some barrels and tried to start the pan aft by shoving with his feet. The pan did not start, whereupon, as plaintiff testified, the captain ordered him to get into the pan and give a hand to push it back. He did so and while the two men were thus pushing, the pan started to move, when just as it started it slid off the track and fell into the hold, carrying the two men with it. The mate was not injured but the plaintiff sustained a double fracture of the right ankle.

[1] There was much discussion on the argument as to whether the drip-pan was an "appliance" or a "place to work." It is not necessary to decide which it was; the employer is required to exercise reasonable care to furnish a safe appliance as well as a safe place to work. This was not an ordinary appliance, like a shovel or a pick, whose defects are obvious. It was a structural part of the vessel so arranged that whatever defects it might have were not appreciable by plaintiff. He certainly did not assume the risk of any such hidden defects when he stepped into the pan to move it in the way in which it was frequently moved. Since the verdict was for the plaintiff we must assume that as to every point where there is conflict of testimony the jury has found that the narrative of the witnesses upon whom plaintiff relies is the correct one.

[2] The jury were instructed as requested by defendant that they could not find against defendant unless the plaintiff established that the pan or its fastenings were defective and that defendant either had actual knowledge of the defects or that the defects had existed for such length of time that defendant must be presumed to have knowledge of them.

The width of the horizontal part of the angle-iron was about two inches. There was a dispute as to whether it was beveled off at the edge; and defendant's witness Thomas O'Brian admits it "had a round edge." George Thomson says that only half of the tread of the wheels rested on the angle-irons that "about half of the wheel projected outside of the edge of the angle-iron." The witness Thomas O'Brian says that the rolling surface of each wheel was from five-eighths to seven-eighths inches across. If only half of this wheel rested on the angle-iron there would be only five-sixteenths to seven-sixteenths inch on each side to hold the pan up. If this be so and the edge of the angle-iron was rounded, the margin of safety would be extremely slight; there would be only a trifle above a quarter-inch support on each side. Some unfavorable jar or thrust or twist might overcome so slight a support. It seems to us that a jury might fairly find that such a margin of safety was too small for reasonably prudent construction.

Assuming this to be a defect, it was there continuously from the day the pan was installed, and defendant might reasonably be charged in the knowing of its existence.

The defendant contends that the plaintiff and the captain were fellow servants and that if the captain was negligent in ordering Hansen on to the pan the defendant is not answerable for that negligence.

In reply it is sufficient to say that the plaintiff does not rest his right of recovery upon the negligence of the captain. It makes no difference whether he got on the pan under orders of the captain. He got on the pan in the course of his employment and what he did was in the performance of his work. There is nothing in the point raised that plaintiff was permitted to get before the jury evidence of conditions subsequent to the accident in relation to the track on which the pan ran. The only object of the questions and the only effect of such answers as were given was to elicit the fact that the parts of the structure were still in existence and under defendant's control; but the court expressly charged the jury that failure to produce them was not to be taken as a presumption against defendant for any purpose.

Exception was taken to a part of the charge on the ground that it might lead the jury to infer that a corporation defendant is liable for the acts of its agents, when an individual would not be liable for the acts of his agents. If the colloquial charge were susceptible of any such construction, the trial judge abundantly corrected it when his attention was called to it by the exception.

The amount of damages awarded is a matter which this court cannot consider.

Judgment affirmed.