## LAURIA v. E. I. DU PONT DE NEMOURS & CO., Inc.

(Circuit Court of Appeals, Second Circuit.    March 20, 1918.)

No. 178.

1. Courts ⨀⟶269—District in Which Suit Must be Brought—Transitory Actions.
    An action under a Virginia statute (Code 1904, § 2902) giving a right of action for death resulting from wrongful act, neglect, or default, where, had not death ensued, the deceased might have recovered, is transitory; and, the statute being remedial, such action can be maintained in a federal District Court sitting for a district other than that of Virginia.

2. Death ⨀⟶23—Actions—Contributory Negligence.
    Where deceased, while operating a coal-carrying car at defendant's plant in Virginia, stood up and was killed when his head came in contact with steam pipes over the track in the boiler house he was guilty of contributory negligence, having been warned of the danger from the pipes, which he could plainly see; and hence there can be no recovery for his death under a Virginia statute giving a right of action for death resulting from negligence, where deceased might have recovered, had death not ensued.

3. Master and Servant ⨀⟶227(1), 203(1)—Contributory Negligence—Assumption of Risk.
    The defenses of contributory negligence and assumption of risk by a servant are distinct.

4. Master and Servant ⨀⟶219(1)—Assumption of Risk.
    A servant assumes the risk of dangers which are patent and of which he has been warned.

5. Courts ⨀⟶352—Direction of Verdict—Power of Federal Courts.
    Although juries are recognized triers of fact, the federal court in a civil case may direct a verdict, when the evidence, with all the inferences that the jury could properly draw, would be insufficient to support a contrary verdict, and it would be necessary to set such a verdict aside, if rendered.

In Error to the District Court of the United States for the Eastern District of New York.

Action by Eleanor Lauria, as administratrix of the goods, chattels, and credits of Anthony Lauria, deceased, against E. I. Du Pont de Nemours & Co., Incorporated.   There was a judgment for defendant, and plaintiff brings error.   Affirmed.

See, also, 241 Fed. 687.

The plaintiff is a resident of the state of New York and the defendant is a corporation organized and existing under the laws of the state of Delaware.   The action was brought to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant while deceased was in its employ as an operator of an electric coal-carrying car or lorry at its plant in Hopewell, Va.   At the close of the case the District Judge directed a verdict for defendant, on the ground that plaintiff had assumed the risk.

⨀⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

McCombs, Wellman, Smyth & Ryan, of New York City (Herbert C. Smyth and James B. Mackie, both of New York City, of counsel), for plaintiff in error.

William H. Button, of New York City (James T. Kilbreth and Frederick H. Button, both of New York City, of counsel), for defendant in error.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

ROGERS, Circuit Judge. [1] This action is grounded upon certain provisions in the Code of Virginia (Code Va. 1904, § 2902) which declare that, whenever the death of a person shall be caused by the wrongful act, neglect, or default of any person or corporation, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and to recover damages in respect thereof, then the person who or corporation which would have been liable if death had not ensued shall be liable, notwithstanding the death of the person injured, and that the action shall be brought in the name of the personal representative of such deceased person for the benefit of the persons named in the statute. While some courts have held that the remedy under such a statute is confined to the courts of the state in which the injury took place, other courts have laid down the contrary doctrine, and held that on principles of comity an action may be maintained in another state which has a statute of the same general character on the same subject, although the two statutes may differ in some of their details. Such statutes are not penal, but remedial, and an action to recover damages for a tort is not local, but transitory. The Supreme Court has repeatedly recognized the right to bring the action in the second state. Spokane Inland R. R. v. Whitley, 237 U. S. 487, 35 Sup. Ct. 655, 59 L. Ed. 1060, L. R. A. 1915F, 736; Stewart v. Baltimore & Ohio R. Co., 168 U. S. 445, 448, 449, 18 Sup. Ct. 105, 42 L. Ed. 537. And no question is raised in this case as to the right of the court to entertain jurisdiction of the subject-matter of the suit.

[2] The complaint alleges that the defendant failed to furnish plaintiff's intestate with a safe place in which to work, and failed to furnish him with proper appliances with which to perform his labors, and that the appliances were inherently dangerous and were not properly guarded, not being provided with telltales or other warning appliances. All this may be true, and we are of opinion that there was negligence on the part of the defendant as alleged; but it does not necessarily follow that the plaintiff is entitled to recover.

At the time of the accident the decedent was operating an electric coal-carrying car, or lorry, at defendant's plant. The plant, so far as is here material, consisted of a boiler room and an engine house connected with it. In the boiler room were 16 boilers, in pairs, back to back. The lorry ran on a track from certain coal pockets outside the the building to a point inside, where the coal could be dumped out of the lorry and fed to the boilers. The lorry had a large "hopper," in which coal was carried, and a bench at one end, on which the driver

or operator sat. There was but a single track, and the car ran on it in shuttle car fashion, and, so running, never turned. The operator of the lorry, in going from the coal pockets to the boilers, faced in the direction he was going; but in returning from the boilers to the pockets he faced in a direction opposite to that in which he was going. The track entered the boiler house through an arch 15 or 20 feet high, and above the track were four steam pipes, on each side of the building, and they led out at right angles through its sides. The first of these pipes was located about 15 inches from the doorway, the second was located about 35 feet from the first, and the other two at approximately like distances. All the pipes were of steel, and the same size and construction, being 15 inches in diameter and weighing 50 pounds to the foot. The lorry passed under these pipes, and when the driver was seated in the operator's seat there was evidence that his cap brushed the pipe as he passed beneath it. The defendant's testimony was that there were one or two inches clearance. The deceased operated the lorry the day before the accident, and had operated it over two hours the morning of the accident. He must have passed under the pipe at least 32 times that morning. But if he stood up in his seat as he undertook to pass under the pipe an accident would be the inevitable result. That the place was dangerous and unsafe goes without saying. His death evidently was occasioned by his head coming in contact with pipe No. 1 as the lorry passed beneath it. He was seen to be standing up perfectly straight between pipe No. 1 and pipe No. 2, as he was approaching pipe No. 1 with his back to it. But the view of the witness was interrupted before the lorry arrived at pipe No. 1, as the shade of the lorry came between him and the operator, although the witness said it appeared to him that the operator ducked his head.

The danger to which he was exposed by the pipes under which he was compelled to pass was a perfectly obvious one, as evident to him as to the defendant. His attention was also specifically directed to it by defendant's agents. The intestate was a man of 25 years of age, and at the time of his employment represented that he had had experience in operating trolley cars. The testimony is that he was "a very smart fellow." He was put to work the day prior to the accident under the direction of an experienced operator, who was to instruct him in the operation of the lorry. This man testified that he instructed him that he should stand up when he had to open up the wheel to turn the coal out, but that at other times he ought to sit down, and keep seated, and that he was to be careful to remain seated when he passed through the door.

The language of the Virginia statute upon which this action is based is not absolute in its terms. The liability which it creates is by virtue of the express language of the statute limited to that class of cases where the decedent would have been entitled to maintain an action to recover damages arising from the wrongful act if death had not ensued; and the rule is that, if the negligence of the person killed contributed proximately to the fatal injury, no action can be maintained on the statute, because he himself could have brought none, had the injury not proved fatal. 1 Cooley on Torts, 264.

In Shearman & Redfield on Negligence (6th Ed.) vol. 1, § 26, the rule is stated as follows:

"It is not essential to this defense that the plaintiff's fault should have been in any degree the cause of the event by which he was injured. It is enough to defeat him if the injury might have been avoided by his exercise of ordinary care. The question to be determined in every case is, not whether the plaintiff's negligence caused, but whether it contributed to, the injury of which he complains. This it may do by exposing him to the risk of injury, quite as effectively as if he committed the very act which injured him."

The earliest reported English case on the subject of contributory negligence is Butterfield v. Forrester, 11 East, .60, decided in 1809. The defendant had negligently placed a pole so that it projected into the street, and the plaintiff, not observing it, negligently rode against it. In the case Lord Ellenborough said:

"A party is not to cast himself upon an obstruction which has been left by the fault of another, and avail himself of it, if he does not himself use common and ordinary caution to be in the right. * * * One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support the action, an obstruction in the road, by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."

The rule laid down in that case has been ever since followed in the courts of that country and of this country. The facts in that case make the doctrine it announces peculiarly applicable to the facts in the case now under consideration. If the decedent had retained his seat on the lorry, as he was instructed to do, he would have passed safely under the pipes. There was no danger, except when he stood up, and by standing up he contributed by his own negligence to the injury which caused his death, and therefore this action cannot be maintained.

[3] In the argument in this court we were told that the deceased assumed all the risk incident to the condition of the lorry and the steampipe. The question of assumption of risk, as has frequently been pointed out, is quite apart from that of contributory negligence. Choctaw, Oklahoma, etc., R. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Dowd v. New York, etc., R. Co., 170 N. Y. 459, 469, 63 N. E. 541. In Thompson on Negligence, § 4611, the distinction is stated as follows: .

"Many of the earlier and some of the later decisions confuse the two subjects of an acceptance by the servant of the risk of employment, and his contributory negligence. The two subjects lie close to each other and in some cases blend; but in other cases they are distinct subjects. Nevertheless, the judges frequently use the words 'contributory negligence' where they really mean an acceptance of the risk. In other instances they use the words 'an acceptance of the risk' where they really mean contributory negligence. Let us illustrate this by the everyday accident connected with coupling cars. In order to make a coupling the cars must be thrust together, either by a locomotive, or by a propulsion called 'kicking' or 'shunting,' or by gravity. There is consequently always danger to the brakeman in the operation. If, in making a coupling, he accidentally, and without negligence, slips and falls, and passes under a wheel, his injury is ascribed to one of the ordinary risks of employment, which risk he has accepted, and no damages can be recovered for it. But if, instead of using the coupling stick furnished by the railway company, he undertakes to make a coupling with his hands, and in the operation gets his hand crushed, this is contributory negligence, and consequently no damages

can be recovered. The distinction between the two cases is that in the former case the brakeman was not guilty of negligence at all; consequently the expression 'contributory negligence' could not be properly applied to his act, but what he suffered was from a mere accident attending the known danger, the risk which he had assumed; whereas in the latter case his own negligence and rashness brought upon him the injury which he suffered."

In individual instances the two ideas sometimes seem to cover the same ground. 7 Cyc. 533, note 62.

[4] If the doctrine of assumption of risk could be regarded as applicable to the facts of this case, we should have to hold that the decedent assumed the risks arising from the defendant's negligence, which had not only been explained to him, but which were so patent as to be readily observed by him. Choctaw Case, supra. In 1 Shearman & Redfield on Negligence, § 209, it is said to be well settled:

"That a servant assumes the risk of every defect of which he had actual or constructive notice when he accepted the employment, so far as he comprehends, or ought to comprehend, the peril involved, even though such defect was due to the master's negligence, provided there was no express promise to remove the defect, nor any new obligation subsequently imposed upon the master with respect thereto."

[5] The only question which remains is whether the trial judge was entitled to direct a verdict. Although juries are recognized triers of the facts, the power of a federal court in a civil case to direct a verdict in favor of one of the parties is undoubted, when the evidence given at the trial, with all inferences that the jury could properly draw from it, is insufficient to support a verdict for the other party, so that it would be necessary to set aside a verdict, if rendered for the latter. Spring Co. v. Edgar, 99 U. S. 645, 656, 25 L. Ed. 487; Parks v. Ross, 11 How. 362, 372, 13 L. Ed. 730.

Judgment affirmed.