## McADOO, Director General of Railroads, v. ANZELLOTTI.

(Circuit Court of Appeals, Second Circuit.   February 9, 1921.)

### No. 71.

1. **Master and servant** ⬅➡217(11)—**Risk of known danger assumed.**

   Where a defect is known to the employee, or is plainly observable by him, he cannot continue to work in the unsafe place or use the defective appliance, in the face of his knowledge and without objection, without assuming the risk.

2. **Master and servant** ⬅➡203(1)—**Assumption of risk and contributory negligence distinct defenses.**

   Assumption of risk and contributory negligence are different and distinct defenses, and where the evidence of assumption of risk at least raises a question of fact for the jury error in refusing to submit it to the jury is not cured by submitting the question of contributory negligence.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Pasquale Anzellotti against William G. McAdoo, Director General of Railroads. Judgment for plaintiff, and defendant brings error. Reversed.

For opinion below, see 262 Fed. 568.

Writ of error to judgment on verdict, entered in the District Court for the Southern District of New York, in an action for personal injuries, brought under federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665). When injured, Anzellotti was a freight handler for the Lehigh Valley Railroad, and had been so for some six or seven months. His work was to load bags of flour on a hand truck, in a freight car, on a float moored to a pier. From the door of the car a gangplank led to the pier, and Anzellotti and other workmen let their loaded trucks run down the inclined plank; they holding the handles with the load behind them.

There was much freight already on the pier, so piled (to a height not clearly shown) as to leave a gangway for horsedrawn trucks or wagons in the center of the pier, and narrower passages from the unloading gangplanks to this central road. Anzellotti starting his hand truck down the gangplank, passed (on the run) through the narrow passage between piles of freight into the central gangway, turned into the same, and there ran into the wheels of a horse-drawn wagon, capsizing his own truck and receiving injuries for which this action was brought.

While alleging generally a failure on the employer's part to furnish him with a safe place to work, the specific negligence relied on was failure to provide any system of warning, in respect of approaching horse trucks, to men who (like Anzellotti) had to run down the gangplank, with loads so heavy that the hand trucks could not be stopped on the inclined plank; the piles of freight on the pier being so high that the approach of vehicles in the central gangway could not be seen until the laborer reached the intersection of central and transverse passage ways. It was admitted by plaintiff below that this condition had existed (whenever there was much freight on the pier) as long as he had worked for defendant, that he was familiar with the danger, that the central gangway was at times much frequented by vehicles, and he knew that he would have no means of ascertaining the proximity of a vehicle other than his own observation.

These facts appearing in the plaintiff's case, defendant at the close thereof moved to dismiss, or direct a verdict, because (inter alia) plaintiff was familiar with the conditions proved, which had existed for some time, that

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the same were "open and obvious," and "whatever risks there were in the situation" plaintiff assumed.

Over due exception the court refused to even submit to the jury any question of assumption of risk, being of opinion that the evidence above outlined presented no such question, but only one of contributory negligence, assuming that negligence existed on the defendant's part. Defendant rested without offering any testimony. The case was sent to the jury with a charge making no mention of any risk or of its assumption. Plaintiff had a verdict, and defendant brought this writ.

Allan McCulloh, of New York City (Clifton P. Williamson and H. S. Ogden, both of New York City, of counsel), for plaintiff in error.
William H. Wack, of New York City, for defendant in error.

Before WARD, HOUGH and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). To trace the origin of the rule of assumption of risk, to do the same for that of contributory negligence, and compare and reconcile the decisions thereunder may be interesting or impossible (18 R. C. L. pp. 639 et seq., 693 et seq.); but neither for the trial court nor this court is the inquiry profitable, because both courts are bound by decisions of long standing and ruling authority. Risk assumption and contributory negligence are things "quite apart" and separately to be considered. Choctaw, etc., Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Lauria v. Du Pont, etc., Co., 250 Fed. 353, 356, 162 C. C. A. 423.

The distinction between the two has been stated with acuteness by Sanborn, C. J., in St. Louis Cordage Co. v. Miller, 126 Fed. 495, 502, 61 C. C. A. 477, 63 L. R. A. 551, and is said to be briefly this—that assumption of risk rests in contract and contributory negligence in tort. This decision and distinction is repeated in Chicago, etc., Co. v. Crotty, 141 Fed. 913, 916, 73 C. C. A. 147, 4 L. R. A. (N. S.) 832, in an opinion by Justice Van Devanter when Circuit Judge, and it was followed in another circuit in Chicago, etc., Co. v. Ponn, 191 Fed. 682, 688, 112 C. C. A. 228.

[1] Whether the definition attempted in the St. Louis Cordage Co. Case is the last word or not, the rule that the two things are two things and not identical has never been departed from in the subsequent decisions of the Supreme Court; e. g., Schlemmer v. Buffalo, etc., Ry., 220 U. S. 590, 31 Sup. Ct. 561, 55 L. Ed. 596; Seaboard Air Line v. Horton, 239 U. S. 595, 36 Sup. Ct. 180, 60 L. Ed. 458; Erie Railroad v. Purucker, 244 U. S. 320, 37 Sup. Ct. 629, 61 L. Ed. 1166; Boldt v. Pennsylvania, etc., Co., 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385. It must be accepted as fixed law that, while the servant is not obliged to pass judgment upon his master's method of transacting his own business, and may assume that reasonable care will be used in furnishing a safe place to work and the appliances necessary for the work, it is just as true that, where a defect is known to the employee, or is so patent as to be readily observed by him, he cannot continue to work in the unsafe place or use the defective apparatus, in the face of knowledge and without objection, without assuming the hazard incident to such a situation. The test is not in the exercise of care to discover the

danger, but whether the defect or danger was known to or plainly observable by the workman.

This rule has been fully accepted and expressed in this court. General Lighterage Co. v. Hansen, 228 Fed. 497, 143 C. C. A. 79; Delaware, etc., Co. v. Busse, 263 Fed. 516; Delaware, etc., Co. v. Tomasco, 256 Fed. 14, 167 C. C. A. 286; and the Lauria Case, supra. It is in the first instance for the court to say whether the facts proven do or do not present a case of assumption of risk. That case may be so plain as to require a direction at the hands of the court in favor of the defendant master, or it may present circumstances concerning which fair-minded and intelligent men may differ, in which event there is a question for the jury; but it cannot be identified with contributory negligence and so disposed of, as was here done.

[2] Since this writ was taken, the Supreme Court has twice emphasized the importance and independence of the defense of assumption of risk under the federal Employers' Liability Act. Southern Pacific Co. v. Berkshire, 254 U. S. 415, 41 Sup. Ct. 162, 65 L. Ed. —— (Jan. 3, 1921); Pryor v. Williams, 254 U. S. 43, 41 Sup. Ct. 36, 65 L. Ed. —— (Nov. 8, 1920). The Berkshire Case is an extreme example of imputed knowledge on the part of the workman. The risk held to be assumed was one of many "mail cranes" standing so near the railway track on which the decedent operated an engine that he was killed, evidently by leaning out of his cab and striking the crane. It was admitted that there was "no evidence whatever" that decedent "actually knew that the crane arm extended close enough to the track to cause the injury." Yet it was held as so clear that decedent must have known of this danger that to "allow the jury to find a verdict for the plaintiff was to allow them to substitute sympathy for evidence and to impose a standard of conduct that had no warrant in the common law."

While we think that the danger in this case was patent, it is proven that it was known, and long had been known, to plaintiff below. That it was a danger did not require the teaching of the event; therefore it was a present risk, and therefore it was assumed.

While on this record we are of opinion that a verdict should have been directed for the defendant, our holding goes no further than that the refusal of the court to act in any way upon the requests of the defendant was error, and requires a new trial, which is granted, with costs to the plaintiff in error.