MICARI *v.* MONROE STONE CO.

Master and Servant—Injuries to Servant—Proximate Cause
—Evidence—Sufficiency.

> In an action by a servant for personal injuries resulting
> from a fall from a tram car, evidence examined, and *held,*
> that it left the cause of plaintiff's injury entirely to con-
> jecture, and that it was not error for the circuit court to
> direct a verdict for defendant.

Error to Monroe; Lockwood, J.  Submitted April 17,
1908.  (Docket No. 24.)  Decided October 5, 1908.

Case by Angelo Micari against the Monroe Stone Com-
pany for personal injuries.  There was judgment for de-
fendant on a verdict directed by the court, and plaintiff
brings error.  Affirmed.

*Willis Baldwin* and *John J. Kiley,* for appellant.

*Fred L. Vandeveer,* for appellee.

McAlvay, J.  Plaintiff was injured while employed
by defendant in its stone quarry.  The stone was taken
from the place it was quarried on a four-wheeled tram car
along a track to a turntable, and then down a track to the
foot of the incline, where it was hoisted up into the mill,
emptied, and returned to the track and pushed back to
the quarry.  The turntable was the central point of sev-
eral diverging tracks which ran from it to different parts
of the quarry.  Plaintiff and another who worked with
him had used the car in question for about 14 months be-
fore the accident.  They were paid by the ton or load.
When the car was loaded, it was pushed to the turntable,
where it was turned onto the main track, and started

down the incline, which was considerable. From the turntable to the foot where the car stopped was 170 feet, and on this trip one of the men usually rode, in order to control the speed of the car by standing on the brake lever. This brake was a simple contrivance, consisting of a lever and a shoe. One end of the lever was fastened near one end of the car by a strap iron bolted through the end, and also to the side of the car. It was a piece of oak

two by four inches, and about five feet long. It extended along the side, and a few inches beyond the end, of the car. This lever could be raised and lowered to allow the friction to be applied to the wheels of the car. The shoe was a piece of 2-inch oak plank 20 inches long and 10 inches wide. It was cut curving in at each end to fit the rims of the wheels, and was fastened to the lever by an iron strap bolted on each side of it, and passing up each side of the lever with a bolt through both straps, and the lever in such position that, when let down, it pressed between and fitted to the rims of the wheels. The curved parts were covered with rubber for the purpose of increasing the friction of the brake, and making it more effective.

This shoe was held in place and prevented from slipping out and beyond the rims of the wheels by an iron rod on its inside next to the side of the car bent at each end at right angles; the ends passing through near the upper and lower edges of the shoe with threads and nuts to hold it secure, leaving on the back side a rod seven or eight inches between the angles, upon which was an eyebolt through which this rod passed, allowing the shoe to be raised and lowered, and holding it from getting away from the side of the car. This eyebolt passed through the frame of the car, and was held by a nut which could be reached from under the car. The accompanying diagram shows the side of the car and the lever shoe and attachments of the brake.

The injury to plaintiff occurred on Wednesday, January 30, 1907. On the preceding Monday this brake was repaired by defendant's blacksmith, who put new rubbers on the shoe and tightened some of the bolts. He did not go under the car. There had been some snow, and the men did not work after these repairs until Wednesday morning. Plaintiff and his helper had loaded the first load of the day, weighing about two tons, and brought the car to the turntable. It was run onto the track to the mill, and both men got on to put more weight on the lever because the track was slippery. Plaintiff stood on the brake lever towards the front end of the car. His helper was near the end of the lever towards the back end of the car. The car went downgrade at considerable speed, and, when within 40 feet of the foot of the incline, plaintiff fell off, and his arm was run over. The injury required amputation. Both men on the car testify that the brake shoe slipped out and down over the wheels, and plaintiff was thrown off.

The negligence declared and relied upon by plaintiff was defective appliances and neglect of inspection. The defective appliance complained of is the eyebolt which passed through and was held with a nut under the car

body. No evidence was offered by defendant, but at the close of plaintiff's case a motion was made for an instructed verdict in its behalf. This motion was granted. After stating the facts, the court gave his reasons for such action as follows:

"This action is brought to recover damages from the defendant. It appears that the car and the brake were the ones usually used in quarries. No complaint is made of the construction of either. They were suitable for the purpose. No want of repair was apparent from 10:30 o'clock Monday, when the new rubbers were put on, until the plaintiff fell off. Plaintiff testifies that they were good, and worked all right. There is no testimony tending to show any specific trouble with the brake or any part of it before the accident, at the time of the accident, or following the accident. This car was used following the accident by plaintiff's partner and others. It does not appear that any one examined the car after the accident, and no testimony as to the condition of the brake after the accident has been offered. The only testimony as to what occurred at the time of the accident is given by the plaintiff and his partner, who were standing upon the lever, and by a workman who stood 60 feet away. All that the two parties on the lever can say is that they think the brake slipped. They think the screw bolt was loose. This testimony is very indefinite. It is not shown that any of the bolts on the brake were loose, and no description of any condition that could have caused the plaintiff to fall is given. The cause of plaintiff's fall is left purely to conjecture. His partner did not fall, the brake did not come off, and there is absolutely no proof of any specific defect in the brake immediately after the accident, nor at any other time. The plaintiff, who had used it, knew of no defect, and his partner, who used it three or four days after the accident, knew of no defect, and no witness described any defect. The plaintiff in his testimony is very uncertain as to why he fell off. It was a frosty morning, and there was snow and ice. The cause of plaintiff's fall is purely conjectural. The car and brake were not unsafe in character. No want of repair is pointed out in the testimony, except that he described the running off the track by this car at the turntable four or five days after the accident. I say, gentlemen, there is no proof in this case

showing any duty upon the defendant which it has failed to perform. There is no specific showing in this case of why this man fell off that brake. There is no showing of what bolt was loose, or, if loose, why loose or how loose, whether a nut was loose, or whether a thread had stripped, or whether the wood had given way—no proof of anything that would tend to show what was specifically the matter with the brake. Therefore there is no proof of negligence in this case.

"It has been claimed by the plaintiff that one of the grounds of negligence is want of inspection. I cannot see that there is any proof of want of inspection on the part of the defendant. For myself, I cannot see, and don't believe, the law requires an employer to inspect a simple thing like a dump cart or a farm wagon. It perhaps is not necessary to determine that in this case, but it seems to me unreasonable, and I hold it is not the law, for a man to inspect a farm wagon to see whether all the bolts are on, whether the king bolt is in place and the nuts on the hounds, and whether it is safe before letting a hired man go out to haul a load of manure. This man had been using the car for 14 months, and was as competent to know whether the car was in condition as any man, and I think that, under the circumstances in this case, there is no want of inspection, and further, I think it is shown that this man knew his duty to report the want of a shoe, and a man was provided by the company to make the repairs when reported, and they were made on Monday, and the car was all right, he said, after that. I think, in view of these facts, and other reasons I have not enumerated, there can be no recovery in this case. Your verdict therefore will be not guilty."

Upon the verdict so instructed a judgment was entered.

Errors are assigned to all of the conclusions of the court in this charge, and we are asked to set aside the judgment. If the court was correct in his conclusion that the evidence did not disclose the cause of the injury, but left the matter to be guessed at, it will be unnecessary to enter upon a discussion of other questions in the case. The plaintiff and his helper testified through an interpreter. They were the only persons present who could relate the

facts and know the cause of the accident. Their testimony is uncertain and contradictory. From a careful examination of all the evidence on the part of the plaintiff, we are forced to agree with the court that the proximate cause of this injury is purely conjectural, and plaintiff could not recover. This court has repeatedly held that verdicts cannot be rendered upon negligence, the proof of which is uncertain, leaving the question open to guess, conjecture, and speculation. *Powers* v. *Railroad Co.*, 143 Mich. 379, and cases cited.

It will be unnecessary to consider any other questions raised.

Judgment is affirmed.

GRANT, C. J., and BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.

GRANT, C. J. I concur in the opinion of Justice McALVAY. The construction of this car was as simple as that of a farm wagon. When any repairs were needed, it was the duty of the workmen in charge of the car to notify the blacksmith. Joseph Micari, plaintiff's partner, notified the blacksmith that the brake needed fixing. The blacksmith soon came and fixed it. The only trouble was "that the rubber kind of wore out." Plaintiff and his partner had used this car for 14 months, and there had been no trouble with the brake, except the wearing out of the rubber. Plaintiff testified that the blacksmith tightened the nuts with a wrench on the Monday morning; that he (plaintiff) saw him do it. Joseph Micari testified that, "if anything got wrong, I would tell him [the blacksmith] to fix it, and the blacksmith would bring his tools down there and fix the car." This witness testified that, before the accident, the car was all right, and that this loosening was very sudden. Plaintiff's expert witness (Michael Perrini) testified:

"Sometimes when extra strains are put on bolts, they

will break, and sometimes they will strip the threads right off the bolts. I couldn't tell whether the bolt broke; or the thread stripped off the bolt; or whether the nut worked off. I wouldn't give an opinion. I don't know."

The plaintiff also testified that there was snow upon the ground, and that, when he stepped on the brake, "I pressed the brake, and slipped off. I don't know whether it was snow or the brake that slipped off." Furthermore, the plaintiff stood on the front of the car, instead of upon the side. He testified that he knew the danger in standing in front, that he could as well have stood upon the side, and that he could have chosen the position he wanted to stand in.

Under these facts, I think the court was correct in directing a verdict for the defendant.

BLAIR and HOOKER, JJ., concurred.