[Civil No. 2110.  Filed February 7, 1924.]

[222 Pac. 1039.]

# ROBERT GREEN, Appellant, v. W. O. JENNINGS and WOLVERINE & ARIZONA MINING COMPANY, a Corporation, Appellees.

1. TRIAL—ON MOTION FOR DIRECTED VERDICT PLAINTIFF'S TESTIMONY ASSUMED TO BE TRUE.—In passing on a motion for a directed verdict, plaintiff's uncontradicted testimony must be assumed to be true.

2. NEGLIGENCE — WHETHER EVIDENCE TENDS TO PROVE NEGLIGENCE QUESTION OF LAW.—In an action for injuries, whether or not the evidence plaintiff introduced tends to prove the negligence of defendant is a question of law for the court.

3. MASTER AND SERVANT — EVIDENCE OF OVERLOADING OF TRUCK AS PROXIMATE CAUSE OF INJURIES HELD TO AUTHORIZE DIRECTED VERDICT.—In an action against his employer and a mining company by a truck driver hauling ore in execution of a contract between defendants for injuries caused by leaping from a runaway truck, where plaintiff claimed that the accident was the combined result of overloading and defective brakes and that the mining company was responsible for the overloading, evidence *held* insufficient to establish causal connection between the overloading of the truck and plaintiff's injuries, but to leave the matter to speculation, authorizing a directed verdict for the company.

APPEAL from a judgment of the Superior Court of the County of Cochise. Samuel L. Pattee, Judge. Affirmed.

Mr. Robert N. French and Mr. John Wilson Ross, for Appellant.

Mr. Fred Sutter and Mr. Walter Roche, for Appellees.

1. See 26 R. C. L. 1073.
2. See 20 R. C. L. 166.
3. See 26 R. C. L. 1075.
   See 26 Cyc. 1460; 29 Cyc. 627; 38 Cyc. 1565.

LYMAN, J.—Robert Green, the appellant, sued W. O. Jennings and the Wolverine & Arizona Mining Company, a corporation, to recover damages for an injury, which he alleges in his complaint was due to the several combined acts of negligence of these two parties. The complaint states that he was employed by Jennings to drive a truck and haul ore in the execution of a contract which Jennings had with the mining company; that he was furnished with a truck having a capacity of four tons, which belonged to Jennings; that he "by the aid of the said defendants" overloaded said truck; that he was required to drive it over a steep and rough road; that by reason of the condition of the road and defective brakes of the truck, he was not able to control it; and that it became unmanageable, and the accident with consequent injuries resulted.

It appears from the evidence that Green was directed by Jennings to take his truck, and haul ore from the bins of the defendant mining company to a station a mile or two distant; and that while the first load was being put upon the truck, the foreman of the mining company told Green to fill up the box; and that it would hold five tons. No other or further directions were given; but throughout the one day in which Green worked, he continued to fill the truck full to the capacity of five tons, and successfully hauled seven loads. During his trip with the eighth load, the footbrake failed to hold, and the emergency brake when used was inadequate to check the speed of the car, which had gained such impetus that when the truck had proceeded about a thousand feet from the starting point Green was afraid longer to stay with his load. He said a trench had been dug at the bottom of the hill for a pipe-line, and that if he struck that with the truck, traveling at such a rate as it then was, it would throw him off or turn the truck over. So he stepped off the truck, lost his

footing, and fell with his arm beneath the wheel and was injured. The truck, after going a short distance further, turned off the road and stopped without further accident. The road was very steep and rough, with chuckholes and rocks.

It is the theory of the plaintiff that the accident was the combined result of an overloaded truck, a rough road, and defective brakes of the truck; that defendant mining company was responsible for the overloading of the truck and the condition of the roadway over which the truck traveled; and that Jennings was responsible for the defective brakes.

At the close of the plaintiff's testimony, the trial court, finding no evidence that the proximate cause of the accident could be traced to any act of negligence of the defendant mining company, directed the jury to return a verdict in its favor. No evidence was introduced by Jennings, and the jury returned a verdict against him. This appeal is from the order of the court directing the dismissal of the cause as to defendant mining company.

There is no conflict in the evidence. The testimony of the plaintiff was uncontradicted, and must therefore be assumed to be true. If there was any evidence that the negligence of the mining company contributed to the accident, it should, of course, have been submitted to the jury. If there was none, then there was nothing to submit. Whether or not such evidence as the plaintiff had introduced tended to prove the negligence of the mining company was a question of law for the court. Where there is no evidence introduced of an issue raised by the pleadings, the court has no right to say to the jury that without such evidence it may return a verdict as though there was evidence. The court, exercising this function, determined that there was no evidence whatever of any liability on the part of defendant mining company. If there was some evidence that the

mining company was responsible for the road and
negligent in the exercise of such responsibility, and
that the accident would not have happened excepting
for such negligence, or if there was some evidence
that the mining company was responsible for the
amount of the load carried by the truck, and that it
was negligent in the exercise of that responsibility,
and that except for such negligence the accident would
not have happened, then the court erred in taking
from the consideration of the jury the mining com-
pany's liability. There is no evidence that the min-
ing company owned the roadway or the right of way
over which the road was built. The only relationship
of the mining company to the road is found in the
testimony that it was the only road communicating
with the mining company's property, and that it was
used for conveying the ore of that company to the rail-
way station. There is no evidence whatever that
the roughness of the road, the chuckholes, or the
rocks, in any way conspired to bring about the acci-
dent. In the absence of some extraordinary coinci-
dence, it could not be assumed that a vehicle would
pass more rapidly over a rough road than it would
over a smooth road, and the roughness of the course
over which the truck traveled was rather calculated
to impede than to accelerate its progress.

Green testifies that shortly after he started on the
last trip, he tried to apply the footbrake, and "there
was no footbrake there," and "I kept gaining speed,
and set the emergency, and still it kept gaining
speed," and then he jumped off while the truck was
going twenty or thirty miles an hour. He further
testifies that "the brakes would not hold anything,
otherwise an accident would not have happened."
Two witnesses for the plaintiff examined the truck
as it was immediately following the accident. One of
them says of the footbrake that there was "no
brake there at all." Both state that the emergency

brake was pulled back. The terms used in his testimony, that there was no footbrake there, are nowhere explained; but evidently the footbrake was not there. Green in his testimony nowhere changes or qualifies his statement that the cause of the accident was the failure of the brakes to work. All of the testimony points to the correctness of that conclusion.

Upon the question of the loading of the car, the testimony shows that this truck was four years old, and had been used in hauling ore from this same mine for several months past, and that it had been habitually filled to the capacity of five tons. There is no evidence as to what was a safe or an unsafe load for the truck, except that it was called and labeled on the truck itself a four-ton truck. It had been constantly used to carry five tons over this same road, apparently without accident. The evidence does not point out, nor does the plaintiff undertake to explain, how the five-ton load contributed to the accident. It is therefore at best guesswork and speculation as to whether or not it had any relation to it.

Ignoring the lack of any authority shown to have been in the foreman to direct the loading of the truck or even suggest the amount it should carry, and that even the suggestion of the foreman is lacking as to all loads except the first one, and considering only the effect of the extra ton, it is impossible to trace its consequence to the ultimate disaster, or to say that if only four tons had been carried the accident would not have happened. Green says that he tried to apply the footbrake when he commenced to descend the hill, and was traveling only seven or eight miles an hour, and that there was no brake there, and that he then tried the emergency brake without appreciable effect. No explanation is offered as to what had become of the footbrake. The cause of its absence is left wholly to conjecture. If the plain-

tiff is correct either in his conclusions or in his statements of fact, the effect of the extra load is eliminated from the problem even as a factor for speculation. When there is no evidence to be submitted to a jury except such as might be the basis of a guess or speculation, it then becomes a question or law for the court to decide. A verdict which is rendered without evidence is rendered contrary to the law. *Micari* v. *Monroe Stone Co.,* 154 Mich. 362, 117 N. W. 939; *Patton* v. *Texas & Pacific R. Co.,* 179 U. S. 658, 45 L. Ed. 361, 21 Sup. Ct. Rep. 275; *Phoenix Ins. Co.* v. *Doster,* 106 U. S. 30, 27 L. Ed. 65, 1 Sup. Ct. Rep. 18; *Schofield* v. *Chicago & St. Paul Railway Co.,* 114 U. S. 615, 29 L. Ed. 224, 5 Sup. Ct. Rep. 1125 (see, also, Rose's U. S. Notes).

For the reasons stated, the judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.