HOWE *v.* MICHIGAN CENTRAL RAILROAD CO.

1. MASTER AND SERVANT — NEGLIGENCE—SAFE PLACE TO WORK — RAILROADS—BRIDGES.

Where a brakeman, in getting off a waycar in the dark, fell over the side of the bridge on which the car stopped, and was killed, the railroad company was not guilty of negligence in failing to provide a safe place in which to work, in that the space between the bottom step of the car and the outer edge of the bridge is only 24⅞ inches, in view of the evidence, which shows that the bridge was not defective and did not materially differ from defendant's other bridges, with the construction of which decedent was familiar.

2. SAME—LEAVING SPILES BELOW BRIDGE.

That there were spiles left projecting above the water under the bridge, and that decedent's death was caused by striking one of them, *held*, insufficient to establish defendant's negligence.

3. SAME—PROXIMATE CAUSE—BURDEN OF PROOF.

The burden of establishing proximate cause, as well as that of negligence, always rests upon the complaining party, and no presumption of it is created by the mere fact of an accident.

4. SAME—NOT ESTABLISHED BY CONJECTURE.

Where there was no eyewitness of the accident, and the cause thereof was a matter of theory and conjecture, evidence *held*, insufficient to establish that defendant's negligence, if any, was the proximate cause.

5. SAME—FEDERAL EMPLOYERS' LIABILITY ACT — ASSUMPTION OF RISK COMPLETE DEFENSE.

The defense of assumption of risk is a complete bar to an action under the Federal employers' liability act.

Master and Servant, 39 C. J. §§ 514, 892, 1196, 1200, 1209, 1211, 1266, 1276; 47 L. R. A. (N. S.) 62; L. R. A. 1915C, 69; 12 A. L. R. 701; 36 A. L. R. 918; 18 R. C. L. 830; 3 R. C. L. Supp. 856; 4 R. C. L. Supp. 1212; 5 R. C. L. Supp. 1004; 6 R. C. L. Supp. 1089.

236—Mich.—37.

6. COURTS—FEDERAL DECISIONS CONTROL STATE COURTS IN EN-
FORCING FEDERAL STATUTES.

> In the enforcement of Federal statutes in the State courts,
> decisions of Federal courts are controlling.

7. MASTER AND SERVANT—WHEN EMPLOYEE ASSUMES RISK—EX-
TRAORDINARY RISKS.

> Under the Federal employers' liability act, an employee
> assumes the risks normally and necessarily incident to
> his employment, and also the extraordinary risks, or risks
> caused by his master's negligence; but he assumes the
> latter only when they are obvious or fully known by him
> and are such as would under the circumstances be seen
> and appreciated by an ordinarily prudent person.

8. SAME—ASSUMPTION OF RISK.

> Where deceased was familiar with the construction of de-
> fendant's bridges, knew there was no railing, knew the
> space between the bottom step of the waycar and the
> outer edge of the bridge, and must have comprehended
> the danger incident to the use thereof, he is *held*, to have
> assumed the risk of falling over the edge of the bridge
> in getting off the car in the dark while it was standing
> on a bridge.

Error to Wayne; Murphy (Alfred J.), J.    Sub-
mitted April 23, 1926.    (Docket No. 23.)    Decided
December 8, 1926.

Case by Ethel M. Howe, administratrix of the estate
of Fred C. Howe, deceased, against the Michigan Cen-
tral Railroad Company for the alleged negligent kill-
ing of plaintiff's decedent.    Judgment for plaintiff.
Defendant brings error.    Reversed, and judgment
ordered entered for defendant.

*J. Walter Dohany* (*Frank E. Robson,* of counsel),
for appellant.

*Bresnahan & Groefsema,* for appellee.

SNOW, J.    For 14 years Fred C. Howe had been

Courts, 15 C. J. § 318; Master and Servant, 39 C. J. §§ 895, 900.

employed by the Michigan Central Railroad Company on its trains, either as fireman, brakeman, or conductor. December 30, 1923, he was working as rear brakeman on a 70-car through freight train, running from Jackson to Detroit on the east-bound main of a double track. The train made no stop after it left Jackson until it arrived at a point about two miles east of Dearborn, when one was made by the engineer because of a block signal ahead. It was night, and was dark, foggy, and rainy. It happened that the waycar of the train, as it came to the stop, stood on the railroad bridge over the River Rouge. In it at the time were the rear brakeman, Howe, and Hillmer, the conductor of the train. It was the duty of Howe to immediately go back of the train with flagman's signals, a sufficient distance to insure protection by placing two torpedoes, and, when necessary, also displaying lighted fusees.

As the train came to a stop the conductor left the car by the north front steps and proceeded along the tracks for observation. He had proceeded but a short distance when the train started and he mounted the waycar as it came along. On entering the car he discovered that Howe was not there. The last the conductor had seen him was just before he (the conductor) left the car. At that time Howe was standing by the rear door of the car, buttoning his coat preparatory to going out, with his two lighted lanterns, one white and one red, at his feet on the floor. He was never seen alive by any one after that, although immediately after he was discovered missing the train crew made search for him. He was found dead in the river the next day about 8 o'clock in the forenoon.

The bridge on which the waycar stopped is 118 feet long, 28 feet 4¾ inches wide, and 22½ feet above the water. From the ball of the south rail of the east-bound track to the south edge of the bridge the distance is 4 feet 2½ inches, and from the outside of

the bottom step of the waycar to the outermost edge of the bridge 24⅞ inches. The space between the track and edge of the bridge is filled with broken stone ballast, held by the tracks on one side and by a steel band along the edge of the bridge on the other.

The Michigan Central Railroad Company was engaged in interstate commerce, as was the deceased as an employee of the company. The plaintiff, who is the widow of deceased, brings this action in a representative capacity for her husband's death, under what is commonly designated as the Federal employers' liability act, 35 U. S. Stat. chap. 149, p. 65, as amended April 5, 1910, 36 U. S. Stat. chap. 143, p. 291, which statute in part is as follows:

"Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its * * * track, roadbed, works, * * * or other equipment."

From a judgment in her favor, defendant brings the case here on writ of error.

We have called attention thus far to sufficient of the facts for a general understanding of the case. Others, deemed essential, will be mentioned as we proceed. The issue raises questions both of interest and importance, and in our investigation of them we are greatly aided by the exhaustive briefs filed by the attorneys for the respective parties.

(1) Was the defendant guilty of negligence?
(2) If so, was such negligence the proximate cause of the death of deceased?

(3) Is plaintiff, in any event, barred from recovery because of the doctrine of assumption of risk?

These are the dominant questions, the answers to which must control the disposition of the case.

Negligence. The bridge in question is modern and what is known as of ballast type. There are a number of them on the main line of the Michigan Central between Detroit and Jackson. They are all of the same general construction, level, no steel or false work, and with approximately the same thickness of crushed stone ballast. Plaintiff's decedent had passed over them many times, and knew of their uniformity, and how they were built. The declaration, as amended, will be regarded as sufficiently broad to charge the defendant with negligence in failing to provide a reasonably safe and sufficiently wide space between the south rail and the edge of the bridge, to permit its necessary use by employees. That is, with negligently failing to provide the plaintiff with a safe place in which to perform his work. It is conceded by both parties that the bridge was substantial, well constructed, and in a good state of repair. Therefore, defendant contends, it cannot be required to condemn a bridge without fault in its plan or structure, and while it is in good repair and safe for the passage of trains; that it has a discretion as to the kind of bridges it will use and when and under what circumstances it will replace them while they are safe. Defendant is supported in its claim by the opinion of this court in *Illick* v. *Railroad Co.*, 67 Mich. 632, and it is urged that this case practically determines in favor of the defendant all questions of negligence in the present one. It was there held that there was no evidence tending to show negligence on the part of the defendant. The negligence contended for by plaintiff was in maintaining an improperly constructed bridge, in that it should have been at least

14 feet between the trusses, whereas it was but 13 feet and 4 inches.    See, also, *Ragon* v. *Railway Co.*, 97 Mich. 265 (37 Am. St. Rep. 336).

But plaintiff here claims, not that there was negligence in the manner of the construction of the bridge itself, nor that it was not wide enough, but that because of the setting of the double tracks thereon too far apart, from center to center, it cut off space that should have been left between the tracks and the edge of the bridge, thereby making it unsafe for the use that might possibly be required of it.    It is practically conceded that the bridge, as a structure, was of modern design, well built, in good condition and repair, and similar to other railroad bridges all along the line. A civil engineer, produced as a witness by the plaintiff, testified relative to the rails on the bridge:

"On all the bridges I measured the distance between the rail on the north side and the south side, all varied, probably due to the alignment of tracks and from heat and cold.    Tracks will move some, due to weather conditions, expansion and contraction, and to fast moving trains passing over them at frequent intervals.

"*Q.* So that you find these variances at various distances, that was not unusual at all on what is known as a ballast track?

"*A.* This is the first case I have ever observed.

"*Q.* And from your experience you readily realize why those variances occur?

"*A.* Yes, sir."

There were no railings on the bridge on either side. Neither are there on any of the other bridges.    They are not, from an engineering stand, used or considered in the construction of railroad bridges.    Notwithstanding plaintiff's claim to the contrary, we think it may be said, from the record, that if this bridge and the tracks thereon were faulty, so were all of defendant's bridges, and to rectify the fault, it would be required to adopt an entirely new style of bridge engineering and construction all along its route.    The

existence of a number of spiles, which the evidence disclosed as projecting from the water beneath the bridge, can by no possible conception of the case be considered as evidence of negligence of the defendant. We are not at all impressed that any negligence on the part of the defendant was established.

Proximate Cause. But, assuming negligence (which we do not concede), we find an utter lack of evidence sufficient to sustain the contention that such negligence was in fact the proximate cause of decedent's death.

Counsel argue that the logical and reasonable inference as to the cause of his death is that he alighted from the right-hand rear step of the waycar, where there was available to him about 24 and $\frac{7}{8}$ inches of landing space; that this was not sufficient, and as he stepped from the car he fell over the edge of the bridge and struck one of a number of spiles that had been permitted to remain in and project out of the water, and that he was thereby rendered unconscious and suffocated in the water without a struggle. That he struck one of the spiles, counsel claim, is evidenced by the fact that when his body was found it had a lifelike appearance. A physician who examined it stated there was no discoloration, no bruises on the scalp, the skull was intact, air was in the lungs, there was no evidence of hemorrhage from the nose, ears or mouth, and no discoloration such as sets in very shortly after death, all of which, it is claimed, tended to show that there must have been some external blow or a similar condition to render the deceased stunned or partly unconscious when he struck the water. And it is also claimed that had decedent not fallen into the river in this manner and struck a spile in so doing, he would not have been killed by the fall, and could have walked or swam out of the water.

This is one possible explanation of the manner decedent came to his death. It is by no means the

only one. No eye saw him after he left the car. No one even knows from which side of the car he left. Is it not just as possible that he stumbled or slipped from the platform or steps of the car and fell into the river? If he did, the space afforded him for walking between the car and the edge of the bridge had nothing to do with it. One theory is as reasonable as the other. Additional ones might be and have been advanced, but the jury should not be permitted to conjecture that he fell from one cause and not from another.

That there was no eyewitness to the accident does not always prevent the making of a possible issue of fact for the jury. But the burden of establishing proximate cause, as well as that of negligence, always rests upon the complaining party, and no presumption of it is created by the mere fact of an accident. Something more should be offered the jury than a situation which, by ingenious interpretation, suggests the mere possibility of defendant's negligence being the cause of the injury.

It was held by the Supreme Court of the United States as recently as June 1st of the present year, in the case of *Chicago, etc., R. Co.* v. *Coogan*, U. S. Adv. Ops. 1925-26, p. 629 (46 Sup. Ct. 564), that a judgment for plaintiff in an action to recover damages for wrongful death could not be sustained where the record left the question of defendant's negligence in the realm of speculation and conjecture. Decedent was a brakeman and was found dead by fellow workmen while his train was being made up by a switch crew. The negligence relied upon was that there was an air pipe line about 800 feet long fastened to the ties by clamps and spikes near the south rail of the track. About 15 feet of this line had been loosened and bent towards the rail, leaving a space of about four inches between it and the ties. Plaintiff contended that deceased was killed by the train by

catching his foot under this bent pipe. The theory was a reasonable one and was supported by additional facts and circumstances. But the court said:

"But there is nothing to show that the pipe had any connection with the accident. The fact that deceased was run over and killed at the time and place disclosed has no tendency to show that his foot was caught. One between the cars coupling the air hose is very liable to be run over if the train is unexpectedly moved. A finding that his foot was not caught under the pipe is quite as consistent with the evidence as a finding that it was."

In *Smith* v. *Railway Co.*, 3 Fed. (2d) 604, decided in 1925, where a freight conductor was last seen alive walking alongside two standing cars, and shortly thereafter was found lying under the wheels of a car which had struck the cars alongside of which he was last seen, there was approval of the charge of the trial court as follows:

"I cannot see in any of this evidence anything which would enable a jury to do more than speculate; that would enable a jury to fall back upon any proof as to what caused the accident. * * * It impresses me as being one of the unfortunate, but inexplicable happenings, which is not susceptible of proof, and in the absence of proof it seems to me that the plaintiff's action must fail."

In the case of *Reading Co.* v. *Boyer*, 6 Fed. (2d) 185, decided in June, 1925, by circuit court of appeals, a very similar situation to that in the instant case presented itself. It was there said:

"There was no evidence which tended to prove how the accident happened. As we have stated, it might have occurred in one of several ways. The only way conceivably involving negligence of the defendant was the lack of ballast between the main track and the track of the siding. We do not concede that lack of ballast in such a place constituted negligence, yet, assuming that it did, there is no evidence which remotely indicates that the decedent 'lost his footing and

was thrown under the train' because of lack of ballast. As there were other ways in which Boyer might have met his death which did not involve negligence of the defendant, the case falls, we think, within the rule of *Murray* v. *Railroad Co.*, 263 Pa. 398, 403 (107 Atl. 21, 23), followed by this court in *Philadelphia, etc., R. Co.* v. *Cannon*, 296 Fed. 302."

In the *Murray Case, supra*, the court held:

"Granting that the airbrake was out of order or defective in the manner stated, the proofs failed to show this condition was the proximate cause of plaintiff's injury. * * * It is not enough for the plaintiff to show his injury might have been due to more than one possible cause, for only one of which defendant is responsible. He is obliged to go further and show the cause that fastens liability upon defendant was the proximate one, and the jury should not be permitted to base a verdict upon a mere conjecture that the injury was caused by one or the other."

The decisions to which attention has just been directed are in accord with the holdings of this court.

In *Beach* v. *Railroad Co.*, 180 Mich. 524, the case is epitomized by Justice MOORE in the following:

"The cause of his injury is entirely in the field of conjecture. The case is within *Manning* v. *Railway Co.*, 105 Mich. 260; *Fuller* v. *Railroad Co.*, 141 Mich. 66; *Micari* v. *Stone Co.*, 154 Mich. 362."

See, also, *Frebes* v. *Railroad Co.*, 218 Mich. 367, and cases there cited; *Powers* v. *Railroad Co.*, 143 Mich. 379; *Fuller* v. *Railroad Co.*, 141 Mich. 66; *Cressler* v. *King Paper Co.*, 181 Mich. 422; *Manning* v. *Railway Co.*, 105 Mich. 260; *Early* v. *Railway Co.*, 66 Mich. 349; *Hewitt* v. *Railroad Co.*, 67 Mich. 61; *Robinson* v. *Wright & Co.*, 94 Mich. 283; *Redmond* v. *Lumber Co.*, 96 Mich. 545; *Johnson* v. *Hovey*, 98 Mich. 343; *Knapp* v. *Railway Co.*, 114 Mich. 199; *Renders* v. *Railroad Co.*, 144 Mich. 387.

We have examined many cases to which our attention has been called by appellee's brief, holding the

proof, in the particular instance, to be sufficient for submission to the jury. But they are not convincing that the facts in the instant case warrant such submission. There is no evidence that Howe fell from the bridge; but if he did fall, there is nothing to warrant the conclusion he fell after alighting from the steps, nor that his fall was caused by any negligence of the defendant. The cause of his death remains a matter of theory and conjecture.

Assumption of Risk. Assumption of risk was at first held by several courts to be no defense to an action under the Federal act. It was later held however, by the Supreme Court of the United States, that the defense of assumption of risk was a complete bar to an action under the statute. *Seaboard Air Line Co.* v. *Horton,* 233 U. S. 492 (34 Sup. Ct. 635, L. R. A. 1915C, 1), and many other cases. Such is now concededly the rule.

Whenever congress enacts statutes pursuant to its power under the commerce clause, such laws, when enforced in both State and Federal courts, must be construed in the light of Federal decisions, and the decisions of the State courts do not govern if they differ therefrom. See 1 Roberts Federal Liabilities of Carriers, § 557, and cases there cited. For the most part, therefore, we will devote our attention to Federal authorities.

The doctrine of assumed risk is well stated in *Director General of Railroads* v. *Templin,* 268 Fed. 483, 485, as follows:

"It is recognized that under the Federal employers' liability act an employee assumes the risks normally and necessarily incident to his employment, and also the extraordinary risks, or risks caused by his master's negligence; yet he assumes the latter only when they are obvious or fully known by him and are such as would under the circumstances be seen and appreciated by an ordinarily prudent person."

But plaintiff's counsel claim the true test is not in the exercise of ordinary care to discover dangers by the employee, but whether the defect is known to or plainly observable by him. Also, that an employee is not charged by law with the assumption of a risk arising out of defective appliances provided by his employer unless his employment was of such a nature as to bring to his attention and cause him to realize and comprehend the danger incident to the use of such appliances; citing *Gila Valley, etc., R. Co.* v. *Hall,* 232 U. S. 94 (34 Sup. Ct. 229); *McAdoo* v. *Anzellotti,* 271 Fed. 268; *Choctaw, etc., R. Co.* v. *McDade,* 191 U. S. 64 (24 Sup. Ct. 24); *Chesapeake & Ohio R. Co.* v. *Proffitt,* 241 U. S. 462 (36 Sup. Ct. 620), and cases there cited.

We believe the test as stated in the *Templin Case, supra,* to be generally followed in applying the doctrine of assumed risk. See *Davis* v. *Crane,* 12 Fed. (2d) 255, and cases there cited. Assumption of risk barred recovery in the following cases: *Southern Pacific Co.* v. *Berkshire,* 254 U. S. 415 (41 Sup. Ct. 162); *Gilmer* v. *Railroad Co.,* 4 Fed. (2d) 963; *Butler* v. *Frazee,* 211 U. S. 459 (29 Sup. Ct. 136); *Tuttle* v. *Railway,* 122 U. S. 189 (7 Sup. Ct. 1166); *Kenney* v. *Meddaugh,* 118 Fed. 209.

In the instant case, even if we apply the rule most favorable to plaintiff, and as contended for by counsel, deceased must be said to have assumed the risk. Railroading is of necessity more or less fraught with danger. Any danger in connection with an employee leaving the train between stations must have been known to and understood by him. As deceased rode the trains over this and the other bridges, it was of course plainly observable that the bridge had no railing, and that the ballast between the edge of the bridge and the tracks covered but a comparatively small space. He knew the character of the construction

of the bridges, and must have realized and comprehended the dangers in leaving the train while standing on a bridge. They were dangers incident to his employment, and if there was any defect in the manner of constructing the bridge or laying the tracks, such defect was plainly observable.

An examination of Michigan authorities, cited by counsel in support of their respective positions, reveals them to be generally in harmony with Federal decisions. If, and where there is conflict, however, as heretofore pointed out, they must give way to the Federal holdings. Some of the cases of our court, having to do with the proposition under consideration, are: *Potter* v. *Railway Co.*, 122 Mich. 179; *Fluhrer* v. *Railway Co.*, 121 Mich. 212; *Miller* v. *Railroad Co.*, 185 Mich. 432; *Pahlan* v. *Railway Co.*, 122 Mich. 232; *Swick* v. *Cement Co.*, 147 Mich. 454; *White* v. *Sugar Co.*, 149 Mich. 473; *Wilson* v. *Railway Co.*, 145 Mich. 509.

While the determination, adversely to plaintiff, of any of what has been referred to as the three dominant questions, would defeat recovery, we feel the importance of the case and the great amount of time given it by counsel (as evidenced by the thoroughness and completeness of their briefs) merit consideration and decision of all of them. This we have attempted to do. Other questions are also raised, discussion of which in our view of the case is rendered unnecessary. The motion for a directed verdict, made by defendant at the close of plaintiff's testimony, should have been granted.

The judgment is reversed without a new trial, and one of no cause of action may be entered, with costs to appellant.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred. CLARK, J., did not sit.