MIECHIKOSKI *v.* CHICAGO & NORTH WESTERN RAILWAY CO.

1. TRIAL—IMPROPER ARGUMENT—MASTER AND SERVANT—EXCESSIVE VERDICT—NEW TRIAL.

   In action under Federal employers' liability act against railroad company by employee for injuries received in fall from switch lamp, where plaintiff's counsel was guilty of improper argument in appealing to passion and prejudice of jurors, which was probably reflected in verdict, which was not only excessive but against clear weight of evidence, judgment is reversed.

2. APPEAL AND ERROR—NEW TRIAL—RECORD.

   Where improper argument of counsel was stated as one reason for motion for new trial and was considered by trial court in denying said motion, it may be considered by Supreme Court, although it does not appear in transcript.

   POTTER, SHARPE, and McDONALD, JJ., dissenting.

Error to Gogebic; Driscoll (George O.), J. Submitted April 7, 1931. (Docket No. 123, Calendar No. 35,519.) Decided December 8, 1931.

Case by Joseph Miechikoski against Chicago & North Western Railway Company, a corporation, under the Federal employers' liability act, for personal injuries. Verdict and judgment for plaintiff. Defendant brings error. Reversed, and new trial granted.

*Frank E. Hook,* for plaintiff.

*Ryall & Frost (Waples & Waples,* of counsel), for defendant.

McDonald, J. (*dissenting*). This action was brought under the Federal employers' liability act (45 USCA § 51 *et seq.*) to recover damages for personal injuries sustained by the plaintiff in falling from a switch lamp while working for the defendant. On the trial there was a verdict and judgment for the plaintiff in the sum of $8,159.75, which defendant reviews on error.

The record presents the following questions, all of which were raised on motions for a directed verdict and a new trial:

1. Was there any evidence of defendant's negligence?

At the time of the accident, the plaintiff was engaged in cleaning, filling, and lighting lamps fastened on the top of switch stands. These stands were six feet high. The lower part was fastened to the railroad ties. About two or three feet up there was a small platform just large enough for the plaintiff to rest his feet on as he reached for the lamp at the top. Five inches below the lamp the rod or standard to which it was attached was spliced and held in position by three rivets. The plaintiff charges that the defendant negligently permitted this portion of the switch to become out of repair and dangerous,

in that it was not kept securely riveted; that two of the rivets had come out before the accident and were not replaced, so when he took hold of it as he customarily did before stepping from the platform, it moved and tipped towards him, causing him to fall on the ground and seriously injuring him.

There was evidence that two of the rivets were gone; that one rivet was not sufficient to hold the rod and lamp in place, but that it would tip as plaintiff says it did at the time of the accident. A witness, John Krinak, testifying for the plaintiff, said:

"I am acquainted with this Reno switch. I saw it before and after the accident. Before the accident there was a splice about six inches long and it was lapped and there was a rivet in it, and the thing used to wobble from one side to the other, and at certain places it used to catch about in the center, and then it used to fall over one way and then the other way. There was just one rivet in there. * * * One rivet would hold it but it wouldn't hold it tight. The notches might prevent it from falling over on itself. * * * It tipped east and west. * * * At times I have seen it standing straight up. The only way I figured it that those notches wouldn't let it go past and it stopped. It would go so far and stop there.

"*Q.* You were right there and saw this thing nearly every day; did it stand straight most of the time or was it leaning over most of the time?

"*A.* Sometimes leaning, sometimes straight."

George Abraham was a witness for the defendant, by whom he had been employed for 20 years. He was foreman of the Ironwood yards in which this switch is located. A part of his duties is to inspect the switch lamps. He testified:

"By a mere casual glance you can tell whether two of the rivets are gone, because the lamp would

absolutely tip right over. These two U-bolts there and one rivet would not keep that lamp in position."

The plaintiff testified that the tipping of the lamp toward him caused the fall. Defendant's witness George Abraham testified that if two rivets were gone the lamp would tip. Witness Krinak testified that two rivets were gone. This testimony if believed by the jury was sufficient to justify the conclusion that defendant was negligent in failing to keep the spliced portion of the rod properly riveted and that such negligence was the proximate cause of the plaintiff's injuries. The court did not err in submitting this question to the jury.

2. Did the plaintiff assume the risk of the injury complained of so as to preclude recovery as a matter of law?

In *Director General of Railroads* v. *Templin* (C. C. A.), 268 Fed. 483, cited with approval in *Howe* v. *Railroad Co.*, 236 Mich. 577, it was said:

"It is recognized that under the Federal employers' liability act an employee assumes the risks normally and necessarily incident to his employment, and also the extraordinary risks, or risks caused by his master's negligence; yet, he assumes the latter only when they are obvious or fully known by him and are such as would under the circumstances be seen and appreciated by an ordinarily prudent person."

In the instant case, it is not claimed that the plaintiff was injured in consequence of a risk ordinarily incident to his employment. If he was injured in the manner claimed by him, it was an extraordinary risk in using a defective switch attributable to his employer's negligence. Under the rule adopted by this court, he assumed this risk and is barred from recovery if the defect in the switch was fully known

by him or was so obvious that he should have known it and appreciated the danger from its use in that condition.   It was not the duty of the plaintiff to examine the spliced portion of the bar to see that the rivets were in place.  That was the daily duty of the foreman.  According to the plaintiff's testimony, the lamp was not tipped when he went to fill it at the time of the accident, which indicated that the rivets were in place.  After he had fallen, he noticed the lamp was tipped toward him, indicating that the rivets were not in place.  Mr. Krinak, in his testimony, explains how the lamp at times could be straight in its position on the switch when two of the rivets were gone.  In these circumstances, the plaintiff well might argue that the defect was not so obvious that an ordinarily prudent man should have seen it.  The evidence was such that, whether it was fully known by the plaintiff or should have been known and appreciated by him, became a question for the jury.  The court did not err in submitting it.

3.   Should the trial court have set aside the verdict on the ground that it was excessive and against the clear weight of the evidence?

The verdict and judgment was for $8,159.75.  As an element of the plaintiff's damages, the court allowed him to recover for future pain and suffering and diminished earning capacity.  In view of the very doubtful testimony as to the extent of the plaintiff's permanent injuries, and considering his age, his state of health prior to the accident, and his then limited earning capacity, we think a verdict of $8,159.75 is excessive.

"To entitle a plaintiff to recover damages for apprehended future consequences of an injury, there must be a degree of probability of such consequences as to amount to a reasonable certainty that they will

result from the original injury." (Syllabus.) *Brininstool* v. *Railways Co.*, 157 Mich. 172.

At the time of the accident the plaintiff was about 60 years old. He was then afflicted with myocarditis, bronchial asthma, arterial and cerebral sclerosis, and other maladies of long standing. It was claimed by the plaintiff that the injury permanently aggravated these maladies. It is not necessary to indulge in any profitless discussion of the testimony on this question. It is sufficient to say that the great weight of medical opinion was to the effect that the plaintiff had not sustained any permanent injury from the accident. As to other elements of damages and as to defendant's liability for negligence, we agree with the trial court that the verdict is not against the great weight of the evidence. We have read carefully all of the testimony, and it is our opinion that a verdict of five thousand dollars would be within the evidence. Therefore unless the plaintiff shall within 30 days from the filing of this opinion remit all damages in excess of $5,000, the judgment should stand reversed and a new trial should be granted. If the excess is remitted, the judgment should stand affirmed. The defendant should have costs of this court.

We have considered all other assignments and have found no reversible error.

POTTER and SHARPE, JJ., concurred with McDONALD, J.

WIEST, J. I think the verdict not only excessive, but, as well, contrary to the clear weight of evidence.

The verdict quite likely reflects the following appeal of counsel for plaintiff to passion and prejudice:

"There has been some insinuation on the part of counsel for the defense and they have raised the question of manufacturing evidence. I wish to state to you, gentlemen of the jury, that some of you are acquainted with this old gentleman who voluntarily took the witness stand, old crippled John, that this silver-tongued slippery attorney for the North Western—

"*Mr. Ryall:* I think I ought to take an exception to that, if the court please, in view of the fact—

"*The Court:* That is improper. The expression 'slippery attorney' is entirely improper and you should not have used it. Do not repeat it. The jury will disregard it. * * *

"Counsel insinuated that there was a manufacturing of evidence. I believe that most of you gentlemen know John Krinak. Counsel said it was an insult to the intelligence of you gentlemen to bring a case of this nature into court. It is the same old line, gentlemen, that the attorneys for the railroad company have developed over years of defense practice. I don't blame him; he just naturally falls into that rut. It is the same old line. When an attorney will stoop to such a level and stray away from the facts and get down to the level of practically trying to brand this poor old man as a perjurer, then he certainly must have a slim case.

"We are not asking you to violate your oaths as jurors. You have never been asked by an attorney for the plaintiff in any case to violate your oaths as jurors. We want you to cling to your oaths as jurors, and when you do, gentlemen of the jury, you will bring in a verdict in favor of this old gentleman who for 30 years was in the employ of the Chicago and North Western Railway Company and was discharged and dismissed because he wouldn't sign a waiver of pension after he was injured."

In *Minneapolis, etc., R. Co.* v. *Moquin,* 283 U. S. 520 (51 Sup. Ct. 501), the court reviewed the failure

of a State court to grant a new trial in a case under the Federal employers' liability act, where the verdict was obtained by appeals to passion and prejudice. The court stated:

"Nor need we inquire into the rules applicable in trials under State law. Whether under the State's jurisprudence the present record would entitle petitioner to a new trial or to such a conditional order as was awarded is immaterial.

"In actions under the Federal statute no verdict can be permitted to stand which is found to be in any degree the result of appeals to passion and prejudice. Obviously such means may be quite as effective to beget a wholly wrong verdict as to produce an excessive one. A litigant gaining a verdict thereby will not be permitted the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent."

The judgment was reversed.

It is said, however, in the brief for plaintiff, that the argument complained of does not appear in the transcript. The defendant moved for a new trial and the argument quoted was stated as one reason and considered by the court in denying the motion.

After the accident the switch stand was removed and stored by defendant and brought into court, showed three rivets holding the splice and disclosed that the standard was rigid.

Plaintiff's case depended upon acceptance by the jury of the testimony of John Krinak, and, when he was confronted with the switch, he claimed that the switch from which plaintiff fell was higher than the one in court. If the switch in court was the one from which plaintiff claims he fell there was no case made against defendant.

The great weight of evidence established the fact that the switch in court was the one from which plaintiff claims he fell and that there had been no change made in it.

The verdict is reversed, and a new trial granted, with costs to defendant.

BUTZEL, C. J., and CLARK, NORTH, and FEAD, JJ., concurred with WIEST, J.