*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATIE KELLY,

      Plaintiff-Appellee,

v

ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY,

      Defendant-Appellant.

UNPUBLISHED
September 21, 2023

No. 363251
Wayne Circuit Court
LC No. 20-015235-NF

Before: SHAPIRO, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant, Esurance Property and Casualty Insurance Company, appeals as of right the trial court's amended stipulated order for consent judgment. On appeal, Esurance challenges the trial court's prior order denying its motion for summary disposition on plaintiff Katie Kelly's claim for surviving-spouse benefits under Michigan's no-fault act, MCL 500.3101 *et seq.* For the reasons stated in this opinion, we reverse the order denying summary disposition, vacate the consent judgment, and remand for entry of an order granting Esurance summary disposition.

## I. BASIC FACTS

On December 24, 2019, plaintiff's husband, James Kelly, was in a single-vehicle crash and died. The parties agree that Kelly had a heart attack and that he struck a tree with his vehicle. They dispute, however, whether striking the tree caused the heart attack or whether having the heart attack caused him to crash into the tree.

Esurance moved for summary disposition. In support of its motion, it presented testimony from the medical examiner, who opined that Kelly's death was a result of natural causes unrelated to the motor vehicle crash. Esurance argued that the evidence negated the causation element of plaintiff's claim or, in the alternative, that it demonstrated that plaintiff's evidence was insufficient to establish the causation element of her claim.

In response, plaintiff argued that a genuine issue of material fact existed for three reasons. First, Kelly's vehicle was travelling fast enough to jump the curb and sustain "disabling" damage

-1-

when it struck the tree. That evidence, she argued, contradicted a statement in the medical record indicating that a witness reported that Kelly was slumped over the steering wheel and only traveling 5 to 10 miles per hour before he crashed. She also noted that the witness statement in the medical record—which the medical examiner relied upon when forming his opinion—did not appear in the police investigative records. Second, plaintiff argued that the medical examiner's conclusion was inconsistent with Kelly's health history, which did not include existing issues with his heart. Third, she pointed out that the medical examiner opined that the crash was caused by Kelly having a heart attack, but that he also testified that the crash could have contributed to Kelly's death.

Esurance argued that plaintiff's position was based on speculation. The trial court, however, denied Esurance's motion without oral argument, determining that there was a question of fact as to whether Kelly's "medical condition arose [out of] the use of the motor vehicle or alternatively, the condition caused the accident."

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Esurance argues that the trial court erred by denying its motion for summary disposition. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). When evaluating a motion brought under MCR 2.116(C)(10), the court must consider "all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021) (quotation marks and citation omitted). A properly supported motion for summary disposition shifts the burden to the opposing party to establish that a genuine issue of disputed fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Reliance on conjecture and speculation is insufficient to meet that burden. *Libralter Plastics, Inc v Chubb Group of Ins Co*, 199 Mich App 482, 486; 502 NW2d 742 (1993). Further, the nonmoving party cannot rely on mere allegations or denials, but must instead, "by affidavits or as otherwise provided in [MCR 2.116], set forth specific facts showing that there is a genuine issue for trial." *Barnard Mfg*, 285 Mich App at 374 (quotation marks and citations omitted). Ultimately, it is not enough for a party "to submit a causation theory that, while factually supported, is, at best, just as possible as another theory." *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994).

## B. ANALYSIS

"Under the no-fault act, an insurer is liable only to pay benefits for 'accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle[.]' " *Mathis v Auto Owners Ins*, 339 Mich App 471, 476; 983 NW2d 447 (2021), quoting MCL 500.3105(1). "It is not *any* bodily injury that triggers an insurer's liability under the no-fault act," but "only those injuries that are caused by the insured's use of a motor vehicle." *Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012) (quotation marks and citation omitted). As explained by our Supreme Court, no-fault coverage is available "only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than

-2-

incidental, fortuitous, or 'but for.' " *Thornton v Allstate Ins Co*, 425 Mich 643, 660; 391 NW2d 320 (1986) (quotation marks and citation omitted). Therefore, when the motor vehicle is merely the situs of the injury rather than the instrumentality of it, the insurer is not liable to pay benefits under the no-fault act. *Id.*

In its motion for summary disposition, Esurance came forward with affirmative evidence that the motor vehicle crash was caused by Kelly having a heart attack before he hit the tree or that, in the alternative, plaintiff could not establish the causation element of her claim. Specifically, the medical examiner determined that the cause of death was natural. In his report, he explained:

> It is my opinion that death was caused by arteriosclerotic cardiovascular disease. The deceased was found unresponsive in a vehicle that he was driving at a slow speed. There were no injuries.
>
> The heart was enlarged, with thickening of the wall of the left ventricle. There was advanced coronary arteriosclerosis. Microscopically, there was scarring in the left ventricle, which indicates prior ischemic episodes.

At his deposition, the medical examiner stated that Kelly did not have any injuries at all, and he stressed that that included no injuries as a result of the motor-vehicle crash. Rather, the death was a result of blockages to the branches in the left coronary artery and the weight of Kelly's heart. He added that there was no way medically to tell whether Kelly had the heart attack before or after he hit the tree. However, based upon witness reports indicating that Kelly was slumped over the wheel before he hit the tree, the medical examiner opined that the heart attack happened before Kelly hit the tree. He added that hitting a tree could trigger a heart attack but that "in the absence of injury" and given that the witness statements clearly indicated that he was slumped over before hitting the tree, "he must have been unconscious before he actually hit the tree."

The witness statements referenced by the medical examiner are included in the medical record. First, a nurse stated in one report:

> Deceased was witnessed to slump over in a vehicle he was in while going 5 to 10 miles per hour and hitting a pole. Conveyed to hospital by EMS. Doctors suspect he had a medical event causing him to lose control while driving. No obvious signs of trauma to the body.

Similarly, a doctor's note indicated that it had been reported that Kelly's vehicle slowed to 5 to 10 miles per hour and that he was slumped over the steering wheel before he struck the tree. The doctor noted the lack of signs of external trauma and indicated that it was "suspected [that] he had a medical even[t] in the car causing him to lose control and hit the pole."

This evidence supports Esurance's argument that no "causal connection" existed between Kelly's death and the car crash. Because Esurance met its "initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence," "[t]he burden then shift[ed] to [plaintiff] to establish that a genuine issue of disputed fact exists." *Quinto*, 451 Mich

at 362. To meet that burden, plaintiff needed "to set forth specific facts showing that a genuine issue of material fact exists." *Id*.

To meet that burden, plaintiff directs this Court to evidence showing that Kelly's vehicle jumped the curb and that it struck the tree with enough force to damage the tree and to disable the vehicle, which had to be towed from the scene. She argues that those facts contradict the witness statements in the medical record that Kelly's vehicle slowed to 5 to 10 miles per hour and that he was slumped over before he hit the tree. She also notes that the witness statements in the medical record—which were relied upon by the medical examiner—do not appear in the police investigative reports. Yet even if the statements are inaccurate, their inaccuracy does not constitute evidence of a causal connection between the car crash and Kelly's heart attack. Instead, viewed in the light most favorable to plaintiff, the evidence identified by plaintiff only reflects that Kelly's vehicle went over the curb, suffered significant damage, and damaged a tree. None of this evidence establishes a "causal connection" between the car crash and Kelly's heart attack. *Thornton*, 425 Mich at 659.

Indeed, the mere fact of a collision, even one involving a "vehicle [that] was traveling fast enough to jump the curb," as well as cause "disabling damage" to the vehicle and "damage to the tree," does not prove causation. While Michigan's appellate courts have not specifically addressed whether a car crash in and of itself proves that any injuries suffered in that collision arose out of the use of a motor vehicle under MCL 500.3105(1), this Court has recognized similar rules of law in other contexts. In *Devault v Gen Motors Corp, Pontiac Motors Div*, 149 Mich App 765, 769-770; 386 NW2d 671 (1986), for example, this Court held that "[t]he occurrence of an injury on an employer's premises in the course of employment does not, by itself, establish a prima facie showing that the injury arose out of the employment." Likewise, in *Skinner*, 445 Mich at 164, the Supreme Court held that "no presumption of [causation] is created by the mere fact of an accident." (Quotation marks and citation omitted). Rather, "the mere happening of an unwitnessed mishap neither eliminates nor reduces a plaintiff's duty to effectively demonstrate causation[.]" *Id*. See also *Howe v Mich Century R Co*, 236 Mich 577, 584; 211 NW 111 (1926) (stating that the burden of establishing causation is on the complaining party and that "no presumption of it is created by the mere fact of an accident."). Likewise, the occurrence of a motor vehicle crash does not, by itself, constitute evidence that an injury arose out of the use of the motor vehicle as a motor vehicle.

Next, plaintiff testified that Kelly "didn't have" a primary care physician, "didn't have a regular doctor at the time," "wasn't seeing a doctor," "wasn't taking any" medications, "didn't have any heart issues," "was still working," and "seemed to be" "in good health" when the car crash happened. She added that she was "shocked" when she learned he had a heart attack. Based on this testimony, plaintiff argues that a juror could infer that the car crash must have caused Kelly's heart attack. This causation theory is possible, but it is no more possible than any other. See *Skinner*, 445 Mich at 164 (holding that it is not enough for a plaintiff "to submit a causation theory that, while factually supported, is, at best, just as possible as another theory"); *Howe*, 236 Mich at 584 (holding that when "[o]ne theory is as reasonable as the other," "the jury should not be permitted to conjecture that [a plaintiff's injuries or death were] from one cause and not from another").

Next, plaintiff points to the medical examiner's testimony that the accident could have contributed to Kelly's death. In fact, however, the examiner testified that there was no way *medically* to know whether the heart attack caused the crash or whether the crash caused the heart attack. The testimony, therefore, that the crash *could* have caused a heart attack is nothing more than speculation and conjecture. Again, plaintiff's theory that the car crash theoretically could have been caused by the car crash "is, at best, just as possible as another theory," *Skinner*, 445 Mich at 164, or just "as reasonable as the other [theory]," *Howe*, 236 Mich at 584. That is not enough.

On appeal, plaintiff suggests that a jury might reject the medical examiner's opinion that the crash occurred as a result of a heart attack. She also argues that the opinion evidence is unreliable because the information he used to form his opinion—i.e., the witness statements that were included in the medical record—have no factual basis. However, such arguments do not satisfy the nonmoving party's burden of proof in response to a motion for summary disposition. Indeed, the defendant is not obligated "to go beyond showing the insufficiency of plaintiff's evidence." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 9; 890 NW2d 344 (2016). Even if a jury disregarded the medical examiner's opinion, plaintiff still needed to "produce evidence sufficient to demonstrate" that the car crash caused her husband's heart attack. Plaintiff has not done so in this case. The only "specific facts" plaintiff has pointed to are the location of and damage to the vehicle and tree after the collision, as well as her testimony about her husband's health history. Viewing those facts in the light most favorable to plaintiff, we conclude that the damage and the unexpected nature of Kelly's heart attack are insufficient to establish a genuine issue of material fact as to whether his use of the vehicle as a motor vehicle caused his heart attack.

On appeal, plaintiff also argues that "an injured party may recover under §[ ]3105 if he can demonstrate that the accident aggravated a pre-existing cardiac condition, and that whether recovery is available is a question to be decided by the trier of fact." Again, however, plaintiff cannot point to any evidence in the record that would lead to a reasonable inference that the car crash aggravated a pre-existing cardiac condition. Nevertheless, plaintiff compares this case to *McKim v Home Ins Co*, 133 Mich App 694; 349 NW2d 533 (1984). In that case, the plaintiff "sustained a myocardial infarction while loading or unloading the vehicle." *Id*. at 696. This Court ruled that a genuine issue of material fact existed as to whether the plaintiff's heart attack arose out of his loading or unloading and reversed the trial court's grant of summary disposition. *Id*. at 699. Yet, in *McKim*, there was evidence that the plaintiff "experienced sweating, nausea and generalized weakness of his extremities" while he was unloading the vehicle. *Id*. at 696. In other words, the plaintiff started experiencing the heart attack while he was using the motor vehicle for purposes of MCL 500.3106(b). Similar circumstantial evidence simply does not exist in this case.

Plaintiff's reliance on *Wilkinson v Lee*, 463 Mich 388; 617 NW2d 305 (2000), and *Denning v Farm Bureau Ins Group*, 130 Mich App 777; 344 NW2d 368 (1983), is similarly misplaced. In *Wilkinson*, 463 Mich at 395-396, the plaintiff's treating physician testified "that the symptoms referable to the tumor were precipitated by the accident," and the defendant's expert similarly testified that the accident "probably contributed to those symptoms and perhaps caused them." There is no such medical testimony in this case. Rather, as noted above, the medical examiner specifically testified that there was no medical indication as to whether the heart attack or the car crash occurred first. Likewise, in *Denning*, 130 Mich App at 780, 788-789, there were factual questions about "whether it was the nature of the closure of the automobile as an automobile that

-5-

caused [toxic fumes emitted by a herbicide being transported in the truck] to overcome the decedent[.]" Here, there is nothing to suggest that hitting the tree caused the heart attack, so *Denning* is inapposite.

In sum, "[t]o be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Skinner*, 445 Mich at 164. Yet in this case, plaintiff's suggestion that the car crash caused Kelly's heart attack is, at best, a guess. A jury may well have guessed in plaintiff's favor. But our court rules and caselaw prevent us from allowing the jury to make that guess. As a result, the trial court erred by denying Esurance's motion for summary disposition.

We reverse the trial court's order denying Esurance's motion for summary disposition, vacate the amended stipulated order reflecting the parties' consent judgment, and remand this matter for entry of an order granting Esurance's motion for summary disposition. Esurance may tax costs as the prevailing party  MCR 7.219(A). We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Thomas C. Cameron