A & G ASSOCIATES, INC v MICHIGAN MUTUAL INSURANCE
COMPANY

Docket No. 54948. Submitted June 5, 1981, at Detroit.—Decided
October 7, 1981. Leave to appeal applied for.

Curtis Burch was a passenger in a taxicab, the driver of which
was employed by A & G Associates, Inc., and Checker Cab
Company. After Burch had paid his fare and begun to walk
away from the cab toward his home, the driver crept up behind
him, struck him repeatedly with a tire iron, and robbed him.
While leaving the scene, the driver apparently attempted to
run Burch over with the cab. Burch was severely injured in the
assault. Curtis and Eppro Burch brought an action against A &
G Associates, Inc., and Checker Cab Company. A & G Associ-
ates, Inc., Checker Cab Company, Eppro Burch and Curtis
Burch then brought an action in the Wayne Circuit Court
against Michigan Mutual Insurance Company, the automobile
insurer of A & G and Checker, for a declaratory judgment of
liability for any judgment or settlement resulting in the
Burches' suit against A & G and Checker. The policy provided
coverage for injuries arising out of the ownership, maintenance
or use of a motor vehicle. The court, James Montante, J.,
granted summary judgment for defendant. Plaintiffs appealed.
*Held:*

Burch did not allege that he was injured from the attempt to

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Automobile Insurance § 194.

Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

Automobile liability insurance: what are accidents or injuries "aris-
ing out of ownership maintenance, or use" of insured vehicle. 89
ALR2d 150.

[2] 7 Am Jur 2d, Automobile Insurance §§ 191, 192.

Liability insurance as covering accident, damage, or injury due to
wanton or wilful misconduct or gross negligence. 20 ALR3d 320.

Liability insurance: assault as an "accident," or injuries from it as
"accident," within coverage clause. 33 ALR2d 1027.

[3] 7 Am Jur 2d, Automobile Insurance § 192.

[4] 7 Am Jur 2d, Automobile Insurance § 389.

Consequences of liability insurer's refusal to assume defense of
action against insured upon ground that claim upon which action
is based is not within coverage of policy. 49 ALR2d 694.

run him over with the cab. The injuries did not arise out of the ownership, maintenance or use of a motor vehicle.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES.

There must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile to create a claim under the terms of an automobile insurance policy which provides coverage for injuries arising out of the ownership, maintenance or use of an automobile; the causal connection must be more than incidental, fortuitous or "but for", and the injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle.

2. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — ASSAULT.

An assault on a passenger by the driver of a taxicab using the vehicle's tire iron is not an injury arising out of the ownership, maintenance or use of an automobile triggering coverage under a policy providing coverage for injuries arising out of the ownership, maintenance or use of the automobile.

3. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — ASSAULT.

Injuries arising out of an assault by a taxicab driver on a passenger are not compensable under the no-fault insurance law, either by its terms or by virtue of public policy.

4. INSURANCE — DUTY TO DEFEND.

An insurer has a duty to defend despite theories of liability asserted against any insured which are not covered under the policy if there are any theories of recovery that fall within the policy.

*Edwards & Edwards* (by *William J. Richards*), for plaintiffs Burch.

*Alan R. Miller, P.C.* (by *Alan R. Miller* and *David H. Robillard*), for plaintiffs A & G Associates, Inc., and Checker Cab Company.

*Sommers, Schwartz, Silver & Schwartz, P.C.,* for defendant.

Before: Bronson, P.J., and R. M. Maher and F. X. O'Brien,* JJ.

Per Curiam. Plaintiffs commenced the present declaratory action seeking to obligate defendant, Michigan Mutual Insurance Company, to defend and pay any settlement or judgment arising out of a separate action instituted by plaintiffs Curtis and Eppro Burch against plaintiffs A & G Associates, Inc., and Checker Cab Company. Following summary judgment in favor of defendant, all plaintiffs appeal as of right.

The underlying suit arose out of an assault on Curtis Burch by Lawrence W. McDonald, a taxicab driver, under the employ of plaintiffs A & G Associates and Checker Cab Company. Burch was a passenger in McDonald's cab in the early morning hours of June 28, 1977. After Burch had paid his fare and begun to walk away from the cab toward his home, McDonald crept up behind him, struck him repeatedly with a tire iron, and robbed him. While leaving the scene, McDonald apparently attempted to run Burch over with the cab. Burch was severely injured in the assault.

The taxicab was insured under a policy issued by Michigan Mutual, which provided in applicable part:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
bodily injury or<br>property damage
to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an

---

* Circuit judge, sitting on the Court of Appeals by assignment.

owned automobile or of a temporary substitute automobile, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

The issue on appeal is essentially whether Mr. Burch's injuries arose out of the ownership, maintenance, or use of the vehicle, and thereby triggered policy coverage. We hold that they did not.

In *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1; 235 NW2d 42 (1975), this Court enunciated a test for determining whether a given injury is within such a liability policy:

"In summary, we conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle." *Id.,* 17.

In the present case, McDonald utilized his role as taxi driver to select Curtis Burch as his robbery victim. Although there is, in that sense, a causal connection between the use of the vehicle and Burch's injuries, we believe that that connection was an incidental one. The injuries suffered by Burch were not foreseeably identifiable with the normal use of the vehicle. Likewise, the fact that McDonald used a part of the vehicle, the tire iron,

as the instrumentality of the assault was a mere fortuitous connection to the operation of the taxicab. See, also, *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526; 280 NW2d 583 (1979), *Hamka v Automobile Club of Michigan,* 89 Mich App 644; 280 NW2d 512 (1979), *Detroit Automobile Inter-Ins Exchange v Higginbotham,* 95 Mich App 213; 290 NW2d 414 (1980).

Recently, in *Ciaramitaro v State Farm Ins Co,* 107 Mich App 68; 308 NW2d 661 (1981), another panel of this Court rejected the argument advanced by plaintiffs that the commercial nature of the vehicle insured should make a difference in resolving cases involving the applicability of no-fault automobile coverage. Although that case involved an attempt to collect benefits by the survivors of the driver of the commercial vehicle, *Ciaramitaro's* holding that an assault is not compensable via no-fault insurance as unconnected to the vehicle, itself, is equally applicable to this case. Indeed, it is an *a fortiori* proposition that, if the risk to a driver of a commercial vehicle, who is known to carry money through his occupation, is not sufficiently foreseeable to be identified with the normal use of the car, then the far less normal and more unforeseen attack by a driver of a commercial vehicle on his passenger is also not compensable via the no-fault automobile statute.

At oral arguments, the attorneys for the plaintiffs vigorously argued that public policy considerations mandate that no-fault automobile policies issued to commercial carriers cover injuries inflicted by the carriers' employees on their passengers. One of the attorneys noted that automobile insurance rates for taxicabs were two and one-half to three times greater than for private vehicles. None of us disagrees that sound public policy should dictate that cab companies insure against

all risks which might foreseeably result in injury to their customers. However, at present, no state statute requires cab companies to carry general liability policies as a condition precedent to their lawful operation. We believe that the cause of the injuries in issue in this case arose out of an entirely different class of risk than that protected against by the automobile policy. While it is true that automobile insurance rates for cabs are much higher than for private vehicles, this is a product of the increased risk of protecting taxis from the normal hazards of the road and not because no-fault policies covering cabs provide coverage for an increased class of risk. While the individual plaintiffs are understandably looking for a deep pocket to compensate them for the conceded wrong inflicted, the corporate defendants appear to be attempting to get a free ride on their no-fault policy because they did not want to expend the funds necessary for liability insurance. The words of the poet, Richard Burton, are apropos, "Penny wise, pound foolish".

A different result might have been reached had Burch's injuries resulted from McDonald's apparent attempt to run Burch over. Such an assault, although intentional and criminal in nature, constitutes the use of an automobile *qua* automobile. However, a review of the record reveals that Burch never alleged in his complaints that he was injured from the latter assault, nor does his deposition testimony hint at any resulting harm. Absent allegations that the injuries were caused by the automobile as such, the complaints' averments are outside the coverage of the insurance policy in question.

Likewise, we also conclude that defendant had no duty to defend the suit on behalf of the cab

companies. The obligation to defend is to be determined by the allegations of the complaint in the underlying action. *Guerdon Industries, Inc v Fidelity & Casualty Co of New York,* 371 Mich 12, 18; 123 NW2d 143 (1963). An insurer has a duty to defend a suit, despite theories of liability asserted that are not covered, if there are any theories of recovery that fall within the policy. *Dochod v Central Mutual Ins Co,* 81 Mich App 63, 67; 264 NW2d 122 (1978). Here, however, we conclude that the Burches' underlying complaint does not allege any theories even arguably within the ambit of the no-fault policy. See *The Detroit Edison Co v Michigan Mutual Ins Co,* 102 Mich App 136, 141-142; 301 NW2d 832 (1981). As such, summary judgment in favor of the insurer was appropriate.

Affirmed.