DENNING v FARM BUREAU INSURANCE GROUP

Docket No. 67051. Submitted June 16, 1983, at Lansing.—Decided December 5, 1983. Leave to appeal applied for.

Plaintiff, Ruth Denning, brought an action in the Jackson Circuit Court seeking to recover no-fault personal injury protection benefits (PIP) from defendant, Farm Bureau Insurance Group, following her husband's death in his automobile. The deceased husband was transporting herbicide in his automobile when he was overcome by toxic fumes emitted by the substance. His car left the road, struck a tree, and turned over. The deceased did not die as a result of injuries sustained in the collision, but rather, of arteriosclerotic cardiovascular disease, a pre-existing condition which was aggravated by his inhalation of the fumes. The trial court, Charles J. Falahee, J., granted the defendant's motion for a summary judgment finding that the fact that the death occurred in the automobile was only incidental and that the same injury could have occurred had the deceased inhaled the fumes in a closed building. The trial court determined that Mr. Denning's death was not foreseeably identifiable with, and therefore did not arise out of, the ownership, operation, maintenance, or use of a motor vehicle. Plaintiff appeals. *Held:*

1. The Court of Appeals is unable to state as a matter of law that the same injury could have occurred had plaintiff's deceased spouse inhaled the fumes in a closed building. The issue requires factual development. Therefore, the case is reversed and remanded for a trial at which an issue will be whether the injury in this case could only have occurred inside an automobile.

2. Other issues capable of factual development by the trial court are whether the closure of the automobile as an automo

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 7 Am Jur 2d, Automobile Insurance §§ 194, 340.

Validity and construction of "no fault" automobile insurance plans. 42 ALR3d 229.

What are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicle. 15 ALR4th 10.

[3] 61A Am Jur 2d, Pleading § 230 *et seq.*

bile caused the decedent to be overcome or whether the movement of the vehicle caused the fumes to be emitted.

3. A two-pronged test adopted by the Supreme Court is applied to determine whether there is coverage under the no-fault act: (1) Could the injury just as well have occurred elsewhere? (if so, there is no recovery) and (2) Was the act which immediately precipitated the injury identifiable with the normal use of a motor vehicle? (if so, there is recovery). The two tests need not always be linked together. Thus, if it appears that if the injury can only occur in a motor vehicle regardless of the immediately precipitating act, there is coverage under the no-fault statute.

Reversed and remanded.

M. J. KELLY, P.J., concurred in the result only and noted his belief that there is no need to depart from prior case law in deciding this case. He noted that an injury is compensable under the no-fault act if (1) there is a causal connection between the automobile and the injury that is more than fortuitous, incidental or but for, and (2) the injury is foreseeably identifiable with the normal use of an automobile. He views the majority opinion as creating the additional test or inquiry, that "if the injury can only occur in a motor vehicle there is coverage under the no-fault statute", and believes there is not case precedent for this new inquiry. He believes that the facts as pled are sufficient to support a finding that the automobile was more than merely the site of the injury and that the causal connection between the automobile and the injury was more than fortuitous or incidental.

### OPINION OF THE COURT

1. INSURANCE — AUTOMOBILES — PERSONAL INJURY PROTECTION.

The no-fault automobile insurance act provides that an insurer is liable to pay personal injury protection benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle (MCL 500.3105; MSA 24.13105).

2. INSURANCE — AUTOMOBILES — PERSONAL INJURY PROTECTION.

A two-pronged test is applied in determining whether the relationship between a vehicle and an injury is such that it meets the requirements of the no-fault act provision regarding personal injury protection benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle; such test asks: (1) Could the injury just as well have occurred elsewhere? (if so, there is no

recovery) and (2) Was the act which immediately precipitated the injury identifiable with the normal use of a motor vehicle? (if so, there is recovery); these two tests need not always be linked together, thus, if the injury can only occur in a motor vehicle regardless of the nature of the immediately precipitating act, there is coverage under the no-fault statute (MCL 500.3105; MSA 24.13105).

3. JUDGMENTS — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM — APPEAL — COURT RULES.

A motion for summary judgment based on the ground that the opposing party has failed to state a claim upon which relief can be granted tests the legal sufficiency of the plaintiff's claim and is to be considered by an examination of the pleadings alone; the Court of Appeals, in reviewing the grant of such a motion, must accept as true the well-pleaded facts in the plaintiff's complaint and determine whether his claims are so clearly unenforceable as a matter of law that no factual development could justify his right to recovery (GCR 1963, 117.2[1]).

CONCURRENCE BY M. J. KELLY, P.J.

4. INSURANCE — AUTOMOBILES — PERSONAL INJURY PROTECTION.

*An injury is compensable under Michigan's no-fault act if (1) there is a causal connection between the automobile and the injury that is more than fortuitous, incidental or but for, and (2) the injury is foreseeably identifiable with the normal use of an automobile (MCL 500.3105; MSA 24.13105).*

*Rappleye, Wilkins & Arcaro* (by *Viola A. Kaminski*), for plaintiff.

*Douvan & Barnett* (by *Gordon J. Barnett, Jr.*), for defendant.

Before: M. J. KELLY, P.J., and SHEPHERD and R. I. COOPER,* JJ.

SHEPHERD, J. Plaintiff sought to recover no-fault personal injury protection benefits (PIP) from defendant insurer following her husband's death in his automobile. MCL 500.3105; MSA 24.13105 pro-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

vides that an insurer is liable to pay PIP benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. The trial court granted summary judgment in favor of defendant. The issue presented to this Court on appeal is whether death due to heart failure caused by inhalation of toxic fumes emitted by a herbicide being transported by plaintiff's decedent is compensable under the no-fault act.

A motion for summary judgment was filed and originally the trial court issued an opinion which stated:

"I find this to be a close case. There is no question but what the automobile was being used at the time to transport the weed killer which was inhaled. It is also foreseeable that an automobile would be used to transport weed killer. Therefore, looking at the facts in the light most favorable to plaintiff, the court is denying the motion for summary judgment."

Thereafter, a motion for reconsideration was filed and the court changed its opinion and decided to grant summary judgment in favor of defendant saying:

"Defendant's contention is correct that the standard to be used is the foreseeability of the injury with the normal use of the motor vehicle, and not the fact that it is foreseeable that an automobile would be used to transport weed killer. I also conclude that the court erred in denying the motion for summary judgment. It is quite clear, as I indicated in my previous opinion, that it is not uncommon to transport weed killer in a car, however, I am not convinced that the inhaling of the fumes from the weed killer which aggravated a pre-existing condition resulting in death is foreseeably identifiable with the normal use, maintenance and owner-

ship of the vehicle. The fact that it occurred in the automobile was only incidental. The same injury could have occurred had plaintiff's deceased spouse inhaled the fumes in a closed building."

It is this last statement of the trial court on the motion for summary judgment which concerns us. For reasons stated herein, we find that we are unable to state as a matter of law that the same injury could have occurred had plaintiff's deceased spouse inhaled the fumes in a closed building. If the facts at trial establish that the injury could only have occurred within the type of closure that is found in an automobile, there would then be a sufficient relationship between the injury and the operation of an automobile to allow for recovery under the no-fault act. Since we believe that this issue requires factual development, we are reversing and remanding for a trial at which an issue will be whether the injury in this case could only have occurred inside an automobile. We also believe that there are other issues capable of factual development, *i.e.,* whether the closure of the automobile as an automobile caused the decedent to be overcome or whether the movement of the vehicle caused the fumes to be emitted.

On March 29, 1981, plaintiff's now-deceased husband, Eugene Denning, was transporting herbicide in his automobile when he was overcome by toxic fumes emitted by the substance. His car left the road, struck a tree, and turned over. Mr. Denning died not as the result of injuries sustained in the collision, however, but of arteriosclerotic cardiovascular disease, a pre-existing condition which was aggravated by his inhalation of the fumes. The trial court, in granting summary judgment in defendant's favor, determined that Mr. Denning's death was not foreseeably identifiable with, and

therefore did not arise out of, the ownership, operation, maintenance, or use of a motor vehicle.

An insured may recover PIP benefits only for "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle * * *". MCL 500.3105(1); MSA 24.13105(1).

It is clear from the statutory language and from the cases discussed in this opinion that the Legislature did not intend all injuries occurring in a motor vehicle to be compensable. Had such an intention been present the statute could have provided for compensation for any injury which took place within an automobile. Instead, the Legislature chose to place limits on the coverage afforded by the no-fault law and the courts have been struggling with the task of defining the precise nature of those limits in the face of language which itself sheds little light on the true nature of the Legislature's intended limitations.

In *Kangas v Aetna Casualty & Surety Co*, 64 Mich App 1, 17; 235 NW2d 42 (1975), this Court construed the scope of the above statutory language:[1]

> "[W]e conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle."

The *Kangas* test has been frequently applied

---

[1] *Kangas v Aetna Casualty & Surety Co*, 64 Mich App 1; 235 NW2d 42 (1975), was construing language in an insurance policy and not the no-fault act. However, the case has been repeatedly cited by the courts in interpreting the identical language in the statute.

and interpreted by the courts of this state in determining whether the relationship between a vehicle and an injury is such that it meets § 3105 requirements. Before examining these cases, a closer analysis of *Kangas* is in order. There, an injury occurring during an altercation between the occupants of a motor vehicle and a pedestrian was not considered to be an injury which arose out of the ownership, use, and operation of a motor vehicle. *Kangas,* p 13, cites with approval the following language from *St Paul Fire & Marine Ins Co v Thomas,* 273 So 2d 117 (Fla App, 1973):

"His location in the automobile at the time of the occurrence was fortuitous, merely the situs of his physical being at the time."

The *Kangas* Court also cites *Mason v Celina Mutual Ins Co,* 161 Colo 442; 423 P2d 24 (1967) (one passenger accidentally discharges pistol killing another; held, injury did not arise out of operation, maintenance, or use of a motor vehicle). In the latter case, the court, quoting 7 Appleman, Insurance Law & Practice, § 4317, p 146, said:

" 'The accident must have arisen out of the inherent nature of the automobile, as such' in order to bring one within the terms of such a policy."

*Kangas* thus appears to be saying that an injury is not compensable under language requiring that it arise out of the ownership, use, and operation of a motor vehicle if the location of the injured party in the automobile was fortuitous and if the accident did not arise out of the inherent nature of an automobile as such.

Subsequent to *Kangas,* benefits have been denied in numerous assault cases on the basis that the

vehicle merely happened to be the site of an assault that could as well have occurred elsewhere.

In these assault cases recovery has been denied in the following circumstances:

(a) assailant fires a gun into an automobile, *Detroit Automobile Inter-Ins Exchange v Higginbotham,* 95 Mich App 213; 290 NW2d 414 (1980), and *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526; 280 NW2d 583 (1979).

(b) pedestrian opened door of car and struck driver, *Hamka v Automobile Club of Michigan,* 89 Mich App 644; 280 NW2d 512 (1979).

(c) cab driver assaults passenger, *A & G Associates, Inc v Michigan Mutual Ins Co,* 110 Mich App 293; 312 NW2d 235 (1981).

However, in *Mann v Detroit Automobile Inter-Ins Exchange,* 111 Mich App 637; 314 NW2d 719 (1981), the Court granted recovery where an unidentified assailant dropped a rock from an expressway overpass onto plaintiff's vehicle. The Court allowed recovery saying:

"This type of assault is directed at the automobile itself, not the driver. It happens only *because* the automobile is passing under the overpass at the appointed time. There is a direct causal relationship between the driving of the vehicle and the assault. In this case, if the plaintiff had not been driving his automobile, he would not have been assaulted. Injuries sustained as a result of the assault, therefore, arise out of the operation and use of the motor vehicle as a motor vehicle." (Emphasis in original.) 111 Mich App 639-640.

Here, the Court is saying that the injury is compensable if it could only have occurred in an

automobile. This appears to be a crucial factor upon which we will comment below.

In *Smith v Community Service Ins Co,* 114 Mich App 431; 319 NW2d 358 (1982), plaintiff was injured while riding on an inner tube being towed on a snow-covered road. The Court, p 435, in allowing coverage, held that "[a]n injury which directly results from the force of a motor vehicle which is being driven down a roadway in the normal manner is an injury which arises 'out of the * * * operation * * * or use of a motor vehicle * * *'. The trial court erred in granting summary judgment to the defendant". Here again, the Court is not looking to the normal operation of a motor vehicle since it concedes that it is not normal for an automobile to tow an inner tube. Nevertheless, since the injury occurred as the result of the force of a motor vehicle, the necessary causal connection was found as a matter of law.

This Court has not always made its findings in these cases as a matter of law. In *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307; 282 NW2d 301 (1979), plaintiff's decedent was killed when a shotgun discharged while he was entering a vehicle and handing the gun to a passenger. The Court held that there could be recovery if the injury occurred during the process of loading the gun into the car, *i.e.,* loading personal property into a vehicle is "use of a motor vehicle as a motor vehicle". The case was remanded for trial on the issue of whether the injury occurred during the process of placing the gun into the car.

Recently, the Supreme Court has had the opportunity to pass judgment on at least a portion of this complex problem in *Gajewski v Auto-Owners Ins Co,* 414 Mich 968; 326 NW2d 825 (1982). *Gajewski* was originally decided by the Court of

Appeals at 112 Mich App 59; 314 NW2d 799 (1981). Plaintiff's injuries were sustained when an explosive device which was attached to the ignition of his motor vehicle detonated as he turned on the ignition switch. The majority of the Court of Appeals panel found that the instrumentality of the injury was the explosive device, not the motor vehicle, and therefore denied benefits. Judge CYNAR, of this Court, applied a different test. His inquiry was first, whether the injury could have resulted whether plaintiff was using the vehicle or not and, second, whether turning the ignition switch must be identified with the normal manner of starting a vehicle. Applying this test, Judge CYNAR found a direct causal relationship between the use of the motor vehicle and plaintiff's injuries and, therefore, determined coverage as a matter of law. The Supreme Court adopted Judge CYNAR's opinion and reversed the Court of Appeals.

The test applied by Judge CYNAR in *Gajewski* is, therefore, two-pronged:

(a) Could the injury just as well have occurred elsewhere? If so, there is no recovery. This is similar to the test applied in *Mann, supra.*

(b) Was the act which immediately precipitated the injury identifiable with the normal use of a motor vehicle? If so, there is recovery.

Logic does not require that these two tests always be linked together. We can envision a case where the injury could not have occurred except in an automobile but the act which immediately precipitated the injury is not identifiable with the normal use of a motor vehicle as in *Mann, supra.* Thus, it appears that if the injury can only occur in a motor vehicle regardless of the nature of the immediately precipitating act, there is coverage under the no-fault statute.

The Court of Appeals recently had to pass upon the case of a plaintiff who was injured when a furnace pilot light ignited, the furnace being situated in a camper attached to his pickup truck. Plaintiff had pulled into a rest area, went into the camper and went to sleep. When he awoke the next day, he lit a match and the escaping gas exploded causing his injuries. The Court stated:

"We are of the view that the plaintiff's vehicle in this case provided more than merely the incidental situs of an injury that could as well have occurred elsewhere. The camper furnace, an attached motor vehicle accessory, was itself the instrumentality causing the injury. Moreover, the involvement of the vehicle cannot be viewed as 'distinctly remote' from plaintiff's injury, regardless of whether 'remoteness' is considered with reference to time, location or sequence of events. Finally, the injuries sustained by the plaintiff here are foreseeably identifiable with the normal use of this motor vehicle—a pickup truck with attached camper— as a motor vehicle. While it is true that the obvious and primary purpose of a motor vehicle is to provide transportation, we cannot say that other uses are not both normal and foreseeable. Specifically, we are persuaded that use of *this* vehicle for camping or sleeping constituted normal and foreseeable use as a motor vehicle and that such use properly encompassed operation of the gas-fueled heater or furnace." *Koole v Michigan Mutual Ins Co,* 126 Mich App 483, 488; 337 NW2d 369 (1983). (Emphasis in original.)

In *Koole,* the escaping gas came from an accessory of the camper which was attached to a motor vehicle. The Court expanded the concept of the normal use of a motor vehicle to include lighting a furnace contained in an attached camper. The Court stated that as long as the gas was emitted from an accessory to the camper, the lighting of

the pilot was a normal use of a motor vehicle as such.

Given the fact that the instrumentality in *Koole* was the furnace contained in the camper and not a poisonous substance brought in from outside, we are not willing to allow coverage merely because poisonous gases are emitted within an automobile. However, we are still left with the question of whether the poisonous gases emitted by the toxic substance in this case could have caused the injuries due to being within the closure of the automobile. If there is something about the automobile causing this type of injury to occur, there would be coverage under the no-fault act. On the second motion for summary judgment, the trial court assumed that the contribution of the automobile to decedent's death was its service as an enclosure rather than its normal use as a motor vehicle. The court made this finding as a matter of law and granted summary judgment.

A motion for summary judgment premised on GCR 1963, 117.2(1), tests the legal sufficiency of plaintiff's claim and is to be considered by an examination of the pleadings alone. *Borman's, Inc v Lake State Development Co,* 60 Mich App 175, 179; 230 NW2d 363 (1975); *Todd v Biglow,* 51 Mich App 346, 349; 214 NW2d 733 (1974). On review, this Court must accept as true the well-pleaded facts in plaintiff's complaint and determine whether her claims are so clearly unenforceable as a matter of law that no factual development could justify her right to recovery. *Crowther v Ross Chemical & Mfg Co,* 42 Mich App 426, 431; 202 NW2d 577 (1972).

We do not know whether plaintiff's decedent's injuries could just as well have occurred within a closed building; we do not know whether it was

the nature of the closure of the automobile as an automobile that caused the fumes to overcome the decedent; we do not know whether the movement of the vehicle contributed to the emission of the noxious fumes. These questions all require factual development and for that reason we remand for trial.

Reversed and remanded. Costs to abide the final outcome.

R. I. COOPER, J., concurred.

M. J. KELLY, P.J. *(concurring).* I concur in result only as I do not believe there is any need to depart from prior case law in deciding this case.

An injury is compensable under Michigan's no-fault act if (1) there is a causal connection between the automobile and the injury that is more than fortuitous, incidental or but for, and (2) the injury is foreseeably identifiable with the normal use of an automobile. *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975), *lv den* 395 Mich 787 (1975). See also *Smith v Community Service Ins Co,* 114 Mich App 431, 433; 319 NW2d 358 (1982), *lv den* 417 Mich 867 (1983); *Ciaramitaro v State Farm Ins Co,* 107 Mich App 68, 69; 308 NW2d 661 (1981), *lv den* 413 Mich 861 (1982); *Dowdy v Motorland Ins Co,* 97 Mich App 242, 249; 293 NW2d 782 (1980); *Detroit Automobile Inter-Ins Exchange v Higginbotham,* 95 Mich App 213, 222; 290 NW2d 414 (1980), *lv den* 409 Mich 919 (1980), and *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526, 530; 280 NW2d 583 (1979), *lv den* 406 Mich 1014 (1979).

As I read it, the majority opinion in this case creates an additional inquiry or test in determining whether an injury is compensable under no-fault: "if the injury can only occur in a motor

vehicle there is coverage under the no-fault statute". Contrary to the majority's view, neither *Mann v Detroit Automobile Inter-Ins Exchange,* 111 Mich App 637; 314 NW2d 719 (1981), *lv den* 414 Mich 903 (1982), nor *Gajewski v Auto-Owners Ins Co,* 414 Mich 968; 326 NW2d 825 (1982) (adopting Judge CYNAR's dissenting opinion from 112 Mich App 59; 314 NW2d 799 [1981]) provides precedent for this new inquiry. In both *Mann* and *Gajewski,* the central issue was whether the causal connection between the automobile and the injury was more than incidental or fortuitous. In *Mann,* the Court held that the injury occurred only because the insured was driving his automobile under a highway overpass. In *Gajewski,* Judge CYNAR held that the automobile was more than merely the site of the injury.

In this case, we must determine whether the plaintiff has sufficiently pled a causal connection between Mr. Denning's death and the automobile that is more than fortuitous or incidental. GCR 1963, 117.2(1). The facts in this case are not in dispute and show that Mr. Denning was transporting a weed killer herbicide in his car when he became ill as a result of inhaling the herbicide fumes concentrated in the cab of his vehicle. Mr. Denning's automobile ran off the road, struck a tree, and turned over. He died as a result of arteriosclerotic cardiovascular disease which was aggravated by inhalation of the fumes. I believe these facts as pled by the plaintiff are sufficient to support a finding that the automobile was more than merely the site of the injury.

I concur in reversal.