PERRYMAN v CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 86799. Submitted May 7, 1986, at Marquette. Decided November 18, 1986. Leave to appeal denied, 428 Mich —.

James R. Perryman sustained an injury to his left hand when a shotgun discharged as he and Richard Peterson, a companion on a hunting trip, were in the process of gathering their guns and provisions inside Perryman's parked van shortly after arriving at their intended destination. Perryman filed an action in district court seeking personal injury protection benefits from his no-fault insurer, Citizens Insurance Company. The district court granted Perryman's motion for summary judgment, ruling that no issue of material fact existed and Perryman was entitled to judgment as a matter of law. Pursuant to a stipulation by the parties, the district court allowed the Veteran's Administration, which had provided medical care to Perryman after the accident at one of its hospitals, to intervene as plaintiff. The district court then entered an order awarding Perryman a judgment for $1,408.78 plus costs and interest and the Veteran's Administration a judgment for $4,464.00, the cost of Perryman's medical care. On appeal, the Delta Circuit Court, Robert E. Goebel, Jr., J., affirmed the district court. Citizens Insurance Company appealed by leave granted.

The Court of Appeals held:

1. Perryman established as a matter of undisputed fact that his injuries were sustained while he was an occupant of a parked motor vehicle and while he and Peterson were in the process of unloading property from the parked motor vehicle. Thus, Perryman's accidental bodily injury arose out of the ownership, operation, maintenance, or use of a parked motor vehicle as a motor vehicle under the provision of the no-fault act.

2. Perryman's use of his van as a motor vehicle was one of

REFERENCES

Am Jur 2d, Automobile Insurance §§ 129 et seq., 351.

Risks within "loading and unloading" clause of motor vehicle liability insurance policy. 6 ALR4th 686.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

the causes contributing to his injuries. The use of a motor vehicle for transporting hunting gear and equipment for a hunting or camping trip is a reasonable and foreseeable use of one's motor vehicle as a motor vehicle.

Affirmed.

J. H. GILLIS, J., dissented. He would hold that a genuine issue of material fact exists as to whether Perryman's hand injury arose out of the use of a parked vehicle as a motor vehicle and, therefore, he would hold that the district court erred in granting summary judgment and the circuit court erred in affirming the district court.

OPINION OF THE COURT

1. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION BENEFITS — PARKED VEHICLES.

A plaintiff who seeks personal injury protection benefits from a no-fault insurer for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle must establish that his injuries were sustained under the circumstances set forth under the no-fault act provisions relating to parked vehicles and must also establish a connection, which is more than incidental, fortuitous, or but for, between his injuries and the use of the parked vehicle as a motor vehicle; the involvement of the parked vehicle in the injuries must be directly related to the parked vehicle's character as a motor vehicle (MCL 500.3106; MSA 24.13106).

DISSENT BY J. H. GILLIS, J.

2. INSURANCE — NO-FAULT — USE OF A MOTOR VEHICLE.

*A plaintiff may not recover no-fault insurance benefits for his injuries when the plaintiff's use of a motor vehicle was only a "but for" cause of his injuries because such injuries could have occurred even if the plaintiff had not been using a motor vehicle; however, even if the injuries could have occurred elsewhere, the plaintiff may recover if his use of the motor vehicle was directly and causally related to his injuries.*

*Green, Renner, Weisse, Rettig, Rademacher & Clark, P.C.* (by *Richard C. Clark*), for James R. Perryman.

*John A. Smietanka,* United States Attorney, and *Anne Vandermale Tuuck,* Assistant United States Attorney, for the Veterans Administration.

*Butch, Quinn, Rosemurgy, Jardis & Valkanoff,*
*P.C.* (by *Terry F. Burkhart*), for Citizens Insurance
Company of America.

Before: T. M. BURNS, P.J., and J. H. GILLIS and
M. J. KELLY, JJ.

M. J. KELLY, J. Defendant appeals by leave
granted from a circuit court order affirming the
district court's order of summary judgment, which
awarded plaintiff no-fault benefits for injuries sus-
tained when a gun discharged inside plaintiff's
motor vehicle. Plaintiff was awarded $1,408.78
plus costs and interest and intervening plaintiff
was awarded $4,464, the amount expended for
plaintiff's medical bills. Defendant does not contest
the amount of damages but alleges error in the
finding of liability. We affirm.

On the evening of October 29, 1981, plaintiff and
his landlord, Richard Peterson, set out from Mar-
quette on a bird hunting trip in plaintiff's 1979
Dodge van. Plaintiff's van was a commercial
model, with two bucket seats in front. The men
stored their provisions and gear on the floor in the
back where there were no seats. Plaintiff's shotgun
was placed on the floor behind his seat. Peterson's
shotgun, stored in a zippered case, was on the floor
either behind his seat or between the seats, with
the barrel pointing toward the back of the van.

On their way to a camp in Escanaba, plaintiff
and Peterson stopped in Skandia at a local bar
where they drank beer and shot pool. Afterward,
they continued on toward the cabin, arriving at
about midnight. Plaintiff pulled off the "two-
wheel" road and parked the van on the grass
outside the cabin. He turned off the van's ignition
and lights and in the darkness the two men began
gathering up some of their gear to take into the

cabin. Peterson reached for his shotgun, unzipped the case and lifted the gun. As he swung the gun around and over to get out of the van, the gun discharged and plaintiff's left hand was struck. Plaintiff was hospitalized for one day and was subsequently treated at the Veteran's Administration Hospital in Iron Mountain. Plaintiff lost 3½ fingers on his left hand as a result of the gunshot wound.

Plaintiff filed this action in district court for no-fault benefits under an insurance policy with defendant, claiming that his injury arose out of his ownership, operation, maintenance or use of a motor vehicle. Plaintiff subsequently filed a motion for summary judgment under GCR 1963, 117.2(3), now MCR 2.116(C)(10), which was granted. The district court order granting summary judgment was entered December 18, 1984, along with an order allowing the Veteran's Administration to intervene as plaintiff pursuant to a stipulation of the parties. Defendant appealed as of right to the circuit court which affirmed the district court judgment by opinion and order entered July 24, 1985. Defendant now appeals to this Court by leave granted.

There is no dispute that plaintiff's vehicle was parked at the time the injury was incurred. Our analysis of this case is thus governed by MCL 500.3106; MSA 24.13106, which provides in relevant part:

> (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:
> (a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.
> (b) Except as provided in subsection (2), the

injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.

(c) Except as provided in subsection (2) for an injury sustained in the course of employment while loading, unloading, or doing mechanical work on a vehicle, the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

In order for plaintiff to be entitled to no-fault benefits, his injuries must have resulted under one of the three circumstances outlined in subsections (a) through (c) of § 3106 of the no-fault act. See *Miller v Auto-Owners Ins Co,* 411 Mich 633, 640; 309 NW2d 544 (1981). The trial court concluded and we agree that plaintiff was an occupant of his parked motor vehicle at the time he sustained his injuries and that Peterson was involved in the process of unloading property from the van. Thus, plaintiff has established as a matter of undisputed fact that his injuries were sustained under the circumstances set forth in subsections (b) and (c) of § 3106.

Plaintiff must additionally establish that his injuries are causally connected to his ownership, maintenance, or use of a motor vehicle. *Miller, supra; Shaw v Allstate Ins Co,* 141 Mich App 331, 333; 367 NW2d 388 (1985). A causal connection means that the "connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.' The involvement of the car in the injury should be 'directly related to its character as a motor vehicle.' " *Thornton v Allstate Ins Co,* 425 Mich 643; 391 NW2d 320 (1986). The difficult and dispositive question in this case is whether the undis-

puted facts establish that plaintiff's injuries were causally connected to his ownership or use of his van, thus entitling him to no-fault insurance benefits.

Defendant argues, as did the defendant in *Thornton*, that the van was merely the site of the accident and in no way caused the accident or injury in question. Upon close analysis of the deposition testimony of both plaintiff and Richard Peterson and relevant case law, we disagree.

In *Shinabarger v Citizens Mutual Ins Co*, 90 Mich App 307; 282 NW2d 301 (1979), lv den 407 Mich 895 (1979), the plaintiffs' decedent was engaged with several friends in an illegal activity referred to as "shining" deer. After one unsuccessful shot, the decedent attempted to reenter the automobile which he was driving. He handed his gun to the front seat passenger and the gun discharged, fatally wounding the decedent in the head.

Plaintiffs filed suit to recover no-fault benefits. After determining as a matter of law which of two insurance policies applied, the trial court determined as a matter of law that plaintiffs were entitled to recover no-fault benefits and granted summary judgment against defendant insurer. On appeal, this Court reversed and remanded for trial on the issue of liability. We held that the sole fact that the injury had occurred while the decedent was entering a motor vehicle did not per se make the injury one that arose out of the use of a motor vehicle as a motor vehicle. Instead, we held that use of the vehicle as a motor vehicle must be one of the causes of the injury, though not the proximate cause. We further held that "[w]here the injury is entirely the result of an independent cause in no way related to the use of the vehicle, . . . the fact that the vehicle is the site of

the injury will not suffice to bring it within the policy coverage." 90 Mich App 313-314.

We think that the undisputed facts in this case support the legal conclusion drawn by the district and circuit courts. Plaintiff's use of his motor vehicle as a motor vehicle was one of the causes contributing to his injuries. As pointed out by the trial court, use of a motor vehicle for transporting hunting gear and equipment for a hunting/camping trip is a reasonable and foreseeable use of one's motor vehicle as a motor vehicle, particularly in the northern areas of this state. Here, plaintiff and Peterson placed their guns on the floor either behind or alongside the seats and kept them there as they traveled to their destination. During the process of unloading, Peterson found himself having to maneuver about in the interior of the van in an attempt to remove his gun fom the vehicle. He reached back for his gun and lifted it upward. He then had to swing the gun over and in front of his body within the fairly limited confines of the cab portion of the van. In doing so, Peterson discharged the gun, resulting in injury to plaintiff.

While we are persuaded that plaintiff's injuries are causally connected to the use of his motor vehicle, we recognize the split of authority among courts which have faced this same issue. See 7 Am Jur 2d, Automobile Insurance, § 202, pp 712-715; 15 ALR4th 10, § 24, pp 91-93. We further recognize that several causes contributed to the accident in this case, including Peterson's failure to unload his weapon prior to transportation and his failure to secure the safety catch, neither of which should result in no-fault liability. Nevertheless, we think that the relatively confined and dimly lit quarters within which Peterson had to maneuver his weapon in order to unload it from the van contrib-

uted as one of the causes of the sequence of events which occurred in this case. Since plaintiff's van was more than merely the site of an accident, we find inapposite the intentional assault cases cited by defendant in its brief on appeal and recently addressed by the Supreme Court in *Thornton, supra.*

Affirmed.

T. M. Burns, J., concurred.

J. H. Gillis, J. *(dissenting)*. I dissent.

I would add the following facts to the majority's statement of the facts in this case. Peterson was still seated when he reached for his shotgun, unzipped its case, and lifted the gun out with his hand on the trigger and on the hammer. His gun discharged as he swung it around to his right. Plaintiff was also seated when he was struck and neither of the van's doors had been opened.

A motion for summary judgment under GCR 1963, 117.2(3) asserts that no genuine issue of material fact exists. Such a motion should not be granted when there is an issue of material fact, since the motion tests the factual support for plaintiff's claim. The trial court must consider the affidavits submitted, pleadings, depositions, admissions, and documentary evidence. The opposing party must show that a genuine issue of disputed fact exists. The test is whether the kind of record which might be developed, giving the benefit of doubt to the opposing party, would leave open an issue upon which reasonable minds might differ. This Court is liberal in finding a genuine issue of material fact. *Linebaugh v Berdish,* 144 Mich App 750, 754; 376 NW2d 400 (1985).

In this case, there is no dispute that plaintiff was the occupant of a parked motor vehicle and

was preparing to unload it. MCL 500.3106; MSA 24.13106. The sole issue in this case is whether plaintiff's hand injury arose out of the use of a motor vehicle as a motor vehicle as required by MCL 500.3106(1); MSA 24.13106(1). I believe that there exists a genuine issue of material fact as to whether it did.

In *Thornton v Allstate Ins Co,* 425 Mich 643; 391 NW2d 320 (1986), our Supreme Court held that the plaintiff, a taxicab driver, who was shot by a "passenger" during a robbery, was not entitled to no-fault benefits under MCL 500.3105(1); MSA 24.13105(1). The Court held that there was no more than a "but for," incidental, or fortuitous connection between the injuries inflicted upon the plaintiff and the "use of a motor vehicle *as a motor vehicle.*" (Emphasis in original.) *Thornton, supra,* p 646. The Court interpreted that phrase as follows:

> In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." The involvement of the car in the injury should be "directly related to its character as a motor vehicle." *Miller v Auto-Owners Ins Co,* 411 Mich 633, 640-641; 309 NW2d 544 (1981). Therefore, the first consideration under MCL 500.3105(1); MSA 24.13105(1), must be the relationship between the injury and the vehicular use of a motor vehicle. Without a relation that is more than "but for," incidental, or fortuitous, there can be no recovery of PIP benefits. [*Thornton, supra,* pp 659-660.]

The Court further noted:

> In this case, the inherent nature of the use of a

motor vehicle did not cause Mr. Thornton's [plaintiff's] injuries. Mr. Thornton was injured by a robber's gunfire. While the injuries were perhaps "foreseeably identifiable" with the occupational or commercial use of a motor vehicle *as a taxicab,* the relation of the gunshot wound to the functional use of a motor vehicle as a motor vehicle was at most merely "but for," incidental, and fortuitous. The mere foreseeability of an injury as an incident to a given use of a motor vehicle is not enough to provide no-fault coverage where the injury itself does not result from the use of the motor vehicle as a motor vehicle. [*Thornton, supra,* p 661. Emphasis in original.]

In *Thornton,* the Court distinguished its decision in *Gajewski v Auto-Owners Ins Co,* 414 Mich 968; 326 NW2d 825 (1982), reversing 112 Mich App 59; 314 NW2d 799 (1981). In *Gajewski,* the plaintiff, who was starting his vehicle, turned the ignition key, thereby detonating an explosive device which had been attached to the ignition mechanism by unknown persons. Plaintiff was severely injured and sued for no-fault benefits. The trial court granted plaintiff's motion for summary judgment, finding plaintiff's injuries occurred as a result of his operation of a motor vehicle. This Court reversed the trial court's order, holding that such an injury was not foreseeably identifiable with the normal use or operation of a vehicle. This Court also noted that even though plaintiff had to turn the ignition key to detonate the explosive device, that it, and not the automobile, was the source of the injury.

Judge CYNAR dissented, holding plaintiff's act of turning the ignition key was identifiable with the normal manner of starting a vehicle. As such, the vehicle was more than the site of the injury; there was a direct causal relationship between the use of the motor vehicle and plaintiff's injuries. The Su-

preme Court adopted Judge CYNAR's dissent when it reversed this Court's decision. *Id.*

In *Denning v Farm Bureau Ins Group,* 130 Mich App 777; 344 NW2d 368 (1983), lv den 419 Mich 877 (1984), reh den 419 Mich 877 (1984), plaintiff sued to recover no-fault benefits on behalf of her husband. Plaintiff's husband was transporting weed killer in his vehicle when he was overcome by its toxic fumes. He lost control of the vehicle and crashed. He died, not as a result of injuries suffered in the collision, but from a preexistent heart condition which was aggravated by his inhalation of the fumes. The trial court granted defendant's motion for summary judgment, finding that plaintiff's husband's death was not foreseeably identifiable with the normal use and ownership of a motor vehicle and that his death could have occurred even if he had not been in an automobile. This Court reversed, holding that it was a question of fact whether plaintiff's husband's injuries could have occurred elsewhere, given the enclosed nature and movement inherent in an automobile.

In *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307; 282 NW2d 301 (1979), lv den 407 Mich 895 (1979), the plaintiffs' decedent was "shining" deer, using another person's vehicle. Decedent, who was driving, spotted a deer, stopped the car, and attempted to shoot the animal. When reentering the automobile, he handed his shotgun to the person sitting next to him. At some point in this process or immediately thereafter, the shotgun accidentally discharged and fatally wounded decedent. The trial court granted summary judgment to plaintiffs, finding they were entitled to no-fault benefits. This Court reversed, holding:

> Although the parties in the case at bar agreed
> that the motor vehicle was the site of the injury

suffered by Shinabarger [decedent], *there was no
stipulation that the use of the vehicle was a cause
of the accident. Indeed, there is nothing in the
record before us to indicate what caused the shot-
gun to discharge. Because the record does not
establish a causal connection between use of the
vehicle and the injury, the trial court erred in
finding liability as a matter of law.*

Plaintiffs argue on appeal that the injury to
Gary Shinabarger occurred during the loading
process, that loading is use of a motor vehicle as a
motor vehicle, and that plaintiffs are therefore
entitled to benefits. We agree that loading is use of
a motor vehicle, especially so where there exists a
separate loading clause in the policy description of
coverage. [Citations omitted.] *The requirement of a
causal connection between the loading process and
the injury, however, remains.* [Citations omitted.]

* * *

In the case at bar, *the record does not clearly
reveal whether the accident occurred during the
loading process and, if it did, whether there was a
causal connection between the loading process and
the injury.* We therefore conclude that the trial
court's grant of summary judgment may not be
upheld on the basis of the loading provision of
§ 3106. [*Shinabarger, supra,* pp 315-316. Emphasis
supplied.]

I believe that from the above-discussed cases
some rules may be drawn in determining whether
a plaintiff's injury is causally related to his vehicu-
lar use of an automobile. *Thornton, supra.* First, if
a plaintiff's use of a motor vehicle is only a "but
for" cause of his injuries, he may not recover no-
fault benefits because his injuries could have oc-
curred even if he had not been using a motor
vehicle. *Id.* However, even if the injury could have
occurred elsewhere (i.e., a bomb explosion as in

*Gajewski,* being overcome by toxic fumes as in *Denning,* or being shot as in *Shinabarger*), a plaintiff may recover if his use of the automobile is directly (causally) related to his injuries (i.e., turning the key while starting an automobile and detonating a bomb as in *Gajewski* or using a car to transport weed killer and having its fumes overcome you because of the enclosed nature and movement inherent in a motor vehicle as in *Denning*). See also MCL 500.3106(1)(b); MSA 24.13106(1)(b), which requires plaintiff's injuries to be "a *direct* result of physical contact with . . . property being lifted onto or lowered from the vehicle in the loading or unloading process." (Emphasis supplied.)

Under these rules, I believe that there is a genuine issue of material fact as to whether the unloading process in this case was causally related to plaintiff's injury. Although I agree that this case differs from *Shinabarger* because defendant concedes plaintiff and Peterson were unloading the van, I also believe that this case is like *Shinabarger* because it is not clear what caused Peterson's shotgun to discharge.

In this regard, I note that the circuit court found that the district court could have properly "inferred" that the van's limited moving space and the location of its seats contributed to plaintiff's injury. The circuit court's findings in this regard were speculative; again, as in *Shinabarger,* it was not clear what caused the shotgun to discharge.

Because plaintiff's motion was brought on the ground that there existed no genuine issue of material fact, plaintiff's motion was improperly granted. There did exist an issue of fact, namely, whether the unloading process, as opposed to Peterson's and plaintiff's own negligence, caused the

firearm to discharge.[1] *Thornton, supra; Gajewski,
supra; Denning, supra; Shinabarger, supra.* If the
unloading process did not cause the injury, the van
was merely the site of the injury and plaintiff
should not be able to recover. *Id.*

---

[1] Peterson may have been intoxicated at the time he handled the
weapon. Moreover, he may not have needed to unzip the gun case to
unload the shotgun. Likewise, plaintiff's act of turning out the van's
lights may have contributed to the injury. I also note that Peterson
apparently violated general hunting regulations by having a loaded
shotgun in the van, MCL 312.10(1)(g)-(h); MSA 13.1339(1)(g)-(h).